AYRES and others *against* WEED and another.

To constitute a renunciation of the trust of executor, an express declaration to that effect, by the person appointed, is not requisite ; but his refusal to act as executor, may be implied.

Where a person named in the will as executor with other persons, being a judge of probate, received the will for probate from the other executors, allowed it to be proved before him, approved it, and took bonds from such other executors for the faithful performance of their trust, and took jurisdiction of the settlement of the estate under the will ; it was held, that these acts sufficiently evinced a renunciation of the trust, and were equivalent to an express refusal to accept it.

The testator devised his estate to " the *Protestant Episcopal Church* in *New-Canaan ;* the income of which to be paid for the support of the rector or minister of said *Church ;* and the same to be a perpetual fund, under the management of the wardens and vestry of said *Episcopal Church.*" Parol evidence was offered to show, that there was an incorporated society of the *Episcopal* denomination in *New-Canaan*, legally formed, by the voluntary association of its members, having no other name than that which it had acquired by assumption or reputation ; that its warden, vestry-men and other officers, and also its delegates to the General Convention, were chosen, by this society, at its meetings ; that the terms *church* and *parish* were, by this denomination of *Christians*, used indiscriminately, and in the same sense as the term *society ;* that there was also another body of persons not incorporated, composed of those members of said society only, who were communicants, and had been baptized ; and which last-mentioned body constituted the *Church* in the society ; that the devisor himself, in speaking of the affairs of the society, always called it the *Church ;* that he had long been a member of the society, and contributed to its support very liberally. Held, that such parol evidence was admissible, to show, that said society was intended, by the testator, in his will, as the object of his bounty.

THIS was an action of ejectment for three parcels of land in *New-Canaan*.

The cause was tried, on the general issue, at *Fairfield, February* term, 1843, before *Williams*, Ch. J.

The plaintiffs claimed title to the premises, as heirs at law of *Ezra Seymour*, deceased. The defendants held under the *Episcopal Society of New-Canaan*, who claimed title as devisees of said *Seymour*.

The defendants offered in evidence an authenticated copy of *Seymour's* will, duly proved, and approved by the court of probate for the district of *Norwalk*. To this the plaintiffs objected, on the ground that the probate was void, because *Benjamin Isaacs*, then the judge, was named as one of the executors in said will, and no evidence was offered to show, that he had renounced the trust, except that the will appeared to be offered for probate, by other executors therein named.

The executors named in the will were *Benjamin Isaacs, Bradley Keeler, Henry R. Weed, Samuel P. Tuttle* and *David Ogden.* The record of the court of probate approving the will, is as follows : " At a court of probate holden at *Norwalk, July* 12th, 1841 ; the last will and testament of *Ezra Seymour* was presented, by *Bradley Keeler, Henry R. Weed* and *Samuel P. Tuttle*, part of the executors therein named ; and said court, finding said will duly proved, do approve and accept the same, and order it to be recorded ; and *Samuel P. Tuttle*, having accepted said trust, gave bond for the faithful performance thereof." The court overruled the objection of the plaintiffs, and admitted the document offered.

The defendants also offered the original will of *Ezra Seymour*, (without the probate,) with the testimony of the subscribing witnesses to its execution. This was also objected to, by the plaintiffs ; but it was admitted by the court.

The clause in the will, under which the defendants claimed, was as follows: "I give, devise and bequeath all my estate, both real and personal, to the *Protestant Episcopal Church* in said *New-Canaan ;* the income or interest of which to be paid for the support of the rector or minister of said *Church,* and the same to be a perpetual fund, under the management of the wardens and vestry of said *Episcopal Church ;* and I do hereby appoint them agents or trustees for that purpose ; and they are faithfully to apply the interest or

income of the whole of my estate, and said estate to belong to said *Church*, and to the management of said wardens and vestry, and their successors in said offices, as agents or trustees, forever."

*Fairfield,*
June, 1844.

Ayres
*v.*
Weed.

The *Protestant Episcopal Society* in *New-Canaan* was formed, by voluntary association; and it had no other name than it acquired by assumption or reputation.

The plaintiffs claimed, that it appeared from the will itself, that the devise was not to the society, but to the *Episcopal Church* in *New-Canaan.* They claimed also, that it appeared from the evidence, that all the members of the society were not members of the church; that the church was a body composed of the communicants and all baptized persons in the society; and that this was the "*Protestant Episcopal Church*," to which the devise in question was made; and that, as this body was not known to the law, the devise was void; and that if there was a community answering the description of the *Protestant Episcopal Church,* the jury should be instructed, that the society could not take by this devise.

The defendants claimed, and offered evidence to prove, that in the *Protestant Episcopal* society, there was no separate organization of a church, as in *Congregational* churches; that all the officers of the church, wardens, vestry-men, &c. and delegates to the convention, were chosen at society meetings; that the terms "church" and "parish," were, with respect to this denomination, used indiscriminately, and in the same sense as the term "society;" that the devisor himself, in speaking of the affairs of the society, always called it "the church;" that he had long been a member of the society, and contributed to its support very liberally.

The plaintiffs objected to all the evidence arising from the declarations and conduct of the devisor, tending to show his intent to make the devise to the society, instead of the church. But the court admitted the evidence, and did not instruct the jury as claimed by the plaintiffs; but did instruct them, that if they should find the facts as claimed by the defendants, and that the devisor, in the devise in question, did mean and intend the *Episcopal Society in New-Canaan,* they would find a verdict for the defendants.

The jury returned a verdict for the defendants accordingly; and the plaintiffs moved for a new trial.

*Fairfield,*
*June, 1844.*

*Ayres*
*v.*
*Weed.*

*Hawley* and *Dutton,* in support of the motion, contended, 1. That there was no legal probate of the will; the person professing to act as judge in taking the probate, being named in the will as one of the executors, and he having never renounced the trust. In the first place, an executor, while he continues such, cannot act as judge to take the probate of a will, by which he is appointed executor. *Sigourney* v. *Sibley,* 21 *Pick.* 101. 106. Secondly, a person appointed an executor, is regarded by the law as invested with that character, at the instant of the testator's death, and such he continues until he *renounces* it. *Toll. Ex.* 45, 6. *Com. Dig. tit.* Administration. B. 9. In this state, he has, before probate, a specific duty assigned him by statute, for the non-performance of which he is subjected to a penalty. *Stat.* 227. *tit.* 31. *c.* 1. *s.* 8. (ed. 1838.) Thirdly, to constitute a renunciation, there must be some *act* on the part of the executor, manifesting an intention to divest himself of the trust; and this must appear upon the record. *Toll. Ex.* 42. In *England,* if the ordinary himself is named an executor, he may renounce before the commissary. *Ib. Off. Ex.* 38. Here, if the judge of probate, (our ordinary,) is appointed, he may renounce before the clerk, who will make an entry of such renunciation on the record. This is a duty merely ministerial, requiring the exercise of no judicial power. Fourthly, in this case, there was no act of Judge *Isaacs* indicating an intention to renounce : if there was any, the record does not show it.

2. That the only way in which a will can have any efficacy as such, is *by probate* in the court of probate. Until this is done, it conveys no title, and confers no rights on devisees or legatees. *Stat.* 227. (ed. 1838.)

3. That the declarations and conduct of the testator were not admissible to show, that by the *church,* he intended the *society,* as his devisee. Where the term used in the will to designate the object of the testator's bounty, has a settled and appropriate meaning, you cannot resort to extrinsic evidence to show that he used the term in a different and peculiar sense. A testator is always presumed to use the words in which he expresses himself, according to their strict and primary acceptation, unless from the context of the will it appears, that he has used them in a different sense. *Wigram on*

*Wills,* 11. *Greenl. Ev.* 325. *n.* Here was a body answering to the term used in the will, in its strict and primary acceptation—consisting, not of the society, but of the communicants and baptized persons in the society. 3 *Stark. Ev.* 1026. (ed. 1832.) *Lockwood* v. *Weed,* 2 *Conn. R.* 287. *Doe* d. *Chichester* v. *Oxenden,* 3 *Taun.* 147. *Whitbread* v. *May* & al. 2 *Bos. & Pul.* 593. *Doe* d. *Brown* v. *Brown,* 11 *East,* 441. *Jackson* d. *Van Vechten* v. *Sill,* 11 *Johns. R.* 201. *Jackson* d. *Houseman* v. *Hart,* 12 *Johns. R.* 77.

*Butler,* contra, contended, 1. That an executor may renounce *by his acts.* No express renunciation, either verbal or written, is necessary. Here, the executor, by acting as judge of probate, evinced his determination not to accept the trust of executor. His receiving the will from the other executors, his taking jurisdiction of it, receiving the proof of its execution, approving it, and taking bonds from the acting executors for the faithful execution of their trust,—acts inconsistent with his being an executor with them—declare his intention as plainly as an express declaration could do. And these acts appear from the record.

2. That if *Isaacs* was disqualified to act as judge of probate, the will might be proved before the court and jury, to show the defendants' title.

3. That the devisee may be designated, by description, or by a name different from the proper name ; and extrinsic evidence is admissible to point out the devisee intended. *Brewster* v. *McCall's Devisees,* 15 *Conn. R.* 274.

*Bissell,* on the same side, was stopped by the court.

STORRS, J. The first question before us, is, whether the record of the probate of the will of *Ezra Seymour,* offered by the defendants, constituted legal evidence of a renunciation or refusal of the office of executor under said will, by the judge of probate before whom it was proved. It is not questioned, that the judge of probate, as well as any other person named as an executor, might refuse to execute that office ; nor that, if there had been a renunciation of the trust by such judge, properly made, it would have been competent for him to allow the other executors named to prove the will and execute

*Fairfield,*
June, 1844.

Ayres
*v.*
Weed.

*Fairfield,*
*June, 1844.*

Ayres
*v.*
Weed.

the trust; and that, in such case, his proceedings would be entirely legal and valid. Under our peculiar system of laws in regard to the settlement of estates, however it may be in *England,* there is no doubt that it is competent for a court of probate, where a part of the executors named in the will refuse to act as such, to commit the execution of it to the others who accept the trust; and that those to whom it is so committed, have exclusively the power to act as executors. But the plaintiffs claim, 1. that in order to constitute a valid renunciation, it was necessary for the judge of probate to signify his refusal, by some express declaration in the court of probate to that effect; and 2. that the fact of such renunciation should be shown, by the records of his court.

No authority has been cited by counsel, or discovered by us, which furnishes any support to the first of these propositions. In *Rex* v. *Simpson,* 3 *Burr.* 1463. 1 *W. Bla.* 456. the question was, whether the executor could retract a renunciation made in a particular form, *viz.* under oath in the prerogative court, and be admitted to prove the will with his co-executors. The particular form of the renunciation, in that instance, is given; but it was not intimated nor claimed, that that was the only mode in which a renunciation of such trust could be made; nor did any such inquiry there arise. The precise ground on which it was insisted, that the renunciation in that case could not be retracted, was, that it was made in a particular manner, *viz.* expressly, and in the court under oath; and from the solemnity of the proceeding in that instance, it was argued, that such retraction was inadmissible. But the whole course of the reasoning of the counsel, as well as the intimation of Lord *Mansfield,* as reported by Judge *Blackstone,* (*p.* 458.) strongly implies, that a formal renunciation is not necessary, but that it might be made in other modes. On the other hand, the authorities, although not numerous, are most explicit to show, that an express renunciation is not requisite, but that the refusal to act as executor may be implied; and several cases of the latter description are given by *Comyn,* in his *Digest, tit.* Administration. B. 4. where he says: "If the executor send a letter, &c. to the ordinary, by which he renounces, and the refusal be recorded, it is sufficient. *Off. Ex.* 54. *R. Cro. Eliz.* 92. *Leo.* 135. So, if a debtee, being named executor, sue the ordinary for

the debt, that amounts to a refusal. *Off. Ex.* 54. So, if an executor plead, never executor, nor ever administered as executor. 9 *Co.* 36. *b.*" In *England,* it is held, that if the executor refuse to take the promissory oath required of executors, or being a *Quaker,* to make the affirmation, this amounts to a refusal, and shall be so recorded. 4 *Burn's Eccl. L.* 213. 1 *Ld. Raym.* 363. In *Broker* v. *Charter, Cro. Eliz.* 92. it was decided, that an executor may refuse to act, by parol; and that if he once so refuses, he cannot afterwards administer; and in that case, the justices were informed, by Dr. *Ford,* that by the civil law, a renouncing may be as well by matter of fact, as by a judicial act; and that executors may refuse *by parol.* Nor on principle do we perceive any substantial reason, why any particular form or mode should be required, by which one named as an executor must signify his refusal to accept the trust, nor why his determination to renounce may not as well be proved or inferred from those acts which clearly evince such renunciation, as in the case of other trusts or offices, in which nothing is more usual than to infer a refusal to accept them, from acts, as well as declarations; and the determination of the mind on these subjects, is an act as susceptible, in its nature, of proof from circumstances, as any other.

As a matter of practice with us, it is believed, that, although the more usual course has been for those declining the trust of executorship or administratorship, to signify to the judge of probate such refusal, by a written communication to that effect, (which is certainly the most safe and proper method,) yet that where this is not done, it has been the practice to find the fact of refusal from any other proper evidence, and thereupon to proceed to commission other persons to execute the trust. No inconvenience has resulted from this practice; and it is repugnant to no principle of law, but is in analogy to principles which prevail in other similar cases; while a practice in conformity with the claim of the plaintiff, would, in our opinion, lead to no useful result, but be productive of great inconvenience, if it would not be found often wholly impracticable. Indeed, in the case before us, unless the executorship might be renounced impliedly, it is very difficult to perceive how the judge of probate, under our laws relating to the settlement of estates, could, in any mode, refuse the

trust.   If an express renunciation is requisite, before whom could he declare it?   It will not be claimed, that it could be done to himself; for the idea of his personally performing an act to himself judicially, would be entirely novel and opposed to one of the plainest maxims of law.   Nor is there any law which would authorize such declaration to be made to the judge of probate of any other district; no such judge having any jurisdiction, excepting where the judge of the district to whom jurisdiction would otherwise appertain, accepts the trust.   Nor, as in *England*, is there here any such officer as the commissary, who is not the clerk of the bishop, but his substitute, and invested with his jurisdiction over the estates of deceased persons to a certain extent, and before whom, therefore, it is held, that the bishop, if appointed an executor, may renounce.   *Off. Ex.* 38. *Jacob's Law Dict. tit.* "Commissary."   It is claimed, that the judge of probate should renounce before his clerk.   It is sufficient to reply, that the clerk is a mere ministerial officer, to record the doings of the court, and, having no judicial power, could not receive a renunciation, any more than he could perform any other judicial act.   It would follow, therefore, from the doctrine claimed by the plaintiff, that the judge of probate, and he alone, would be in a situation where he could not decline the trust, but would be obliged to act as an executor, when named as such, at all events.   While this case refutes the claim that there can be no implied renunciation, it also constitutes one of the strongest cases of such a renunciation that could be presented.   The acts of Judge *Isaacs*, in his judicial capacity, in receiving the will for probate from the other executors named, in allowing it to be proved, in approving it, and in taking bonds from them for its faithful execution, and in thus taking jurisdiction of the settlement of the estate under the will, (which it would not be competent for him to do, if he were to act as one of the executors himself,) are wholly incompatible with his being a co-executor, and therefore furnish an irresistible inference or implication that such was not his intention.

We therefore consider these acts as being an implied renunciation of the trust, and equivalent to an express refusal to accept it.   And these acts appearing on the records of the probate court, the renunciation of the judge, which is the

legal effect of those acts, was thereby sufficiently shown. The judge of probate, therefore, had jurisdiction of the probate of the will in question.

Hence it becomes unnecessary to inquire as to the admissibility of the will, in connexion with the testimony of the subscribing witnesses to its execution, as proof of the title of the defendants under it, without showing it to have been regularly proved in the proper court of probate. The only object of the court below in admitting this evidence, was, to give the defendants the benefit of the question as to its admissibility, if this court should be opposed to them on the point which has been considered.

The next question involves the propriety of the charge given to the jury. It appeared, that there was an incorporated society of the *Episcopal* denomination, in *New-Canaan,* legally formed, by the voluntary association of its members, having no other name than that which it had acquired by assumption or reputation ; that its wardens, vestry-men and other officers, and also its delegates to the General Convention, were chosen by this society, at its meetings; that the terms *church* and *parish* were, by the said denomination of *Christians,* used indiscriminately, and in the same sense as the term *society ;* that there was also another body of persons, not incorporated, composed of those members of said society only, who were communicants and had been baptized, and which last-mentioned body constituted, what was termed, *the church* in said society. Parol evidence was introduced to show which of these bodies was intended, by the devise in question, which was to "*the Protestant Episcopal Church in New-Canaan."* The judge submitted the question to the jury, whether the testator, in the devise, meant and intended the said *Episcopal* society, instructing them, that if he did, their verdict should be for the defendants. The question, therefore, is, whether it was competent to show which of these two bodies, the society, or that portion of it so termed the *church,* was intended, by the testator, in said devise?

This court having had occasion so recently, in the case of *Brewster and others* v. *McCall's Devisees,* 15 *Conn. R.* 274. to examine and settle the principles applicable, as we conceive, to this question, it is not deemed necessary now to go minutely into the subject. We think, that that decision fully

sanctions the course taken in this case, by the judge below. The plaintiffs, in their objection, assume, that there was only one body, *viz.* that portion of the society composed of communicants and baptized persons, answering the description contained in the devise; and they claim that, as the other, *viz.* the society, did not come within the terms of such description, parol evidence was inadmissible to show, that the latter was intended. It is not necessary to determine how the question would stand, in that case, because, in our opinion, the facts here are not such as this objection supposes.

In this case, it appears, that there were two bodies of persons, neither of which had any name, excepting by assumption or reputation; by which is meant, that neither of them had any name conferred upon or attached to it, by any law or charter; and that both of them were usually and indiscriminately called and known by the name used in the will to denote the devisee. If this were all, it would clearly present the common case of a latent ambiguity as to the person intended by the testator, disclosed by the parol evidence showing that more than one person answers the description he has used, which, on the familiar rule, could be explained by evidence of the same kind, which should be pertinent to the inquiry as to the person intended. It is said, however, that the term *church* really and truly denotes only the communicants and baptized persons in the society; but that it is not a proper term by which to designate all the members of the society; and that, there being only one person answering the description in the will, parol testimony is inadmissible to show that another was intended; for that such evidence can be received only when the person claimed to be intended, answers the description in the instrument, or, in other words, where the description in the instrument is applicable to him; as if a devise be to *A. B.*, where there is only one person of that name, and it should be attempted to be shown, that another, by the name of *C. D.*, was intended. It may be a more correct use of the word *church* to apply it to the communicants and baptized persons only, than to the society at large: the question however is, whether both really bear the same name, whether correctly or incorrectly. If a person is commonly called and known by a name, which does not properly belong to him, but which properly belongs to anoth-

*Fairfield,*
June, 1844.

Ayres
*v.*
Weed.

er, it cannot with propriety be said, that that name, although a false one, is not in fact descriptive of the former, unless we go so far as to say, that a person is not described by the name by which he is known.   That would clearly be a case where two different persons would be described by the same name ; and where, therefore, parol evidence might be introduced to remove the doubt as to which of them was intended.   That the name given to a person is a nick-name, does not render it the less a description of him, although indeed a less correct one, than if his true name were used : and it is well settled, that if a legacy is given, or a devise made, to a person, by his nick-name, parol evidence is admissible to show, that the testator usually called him by that name, in order to show, that he was intended : much more would it be admissible to show, that he was generally known in the community by that name. 1 *Cox*, 425. 1 *Ves. Jr.* 266. 2 *Dall.* 70. 13 *Pick.* 523. 5 *Monroe*, 368, 9.   If, in the present case, it did not appear, that the communicants and baptized persons were called the *church,* could there be a doubt whether the society would take under the devise in question ? Clearly not.   If in that case, the society would take as being described by the name *church,* it seems necessarily to follow, that it is such a description of the society as that, when it is made to appear that there is another body having the same name, and who therefore might take by the same description, a doubt arises as to which of the two were intended by the devisor.   In the case before us, neither of the two bodies of persons has any legal proper name, in the same sense as a natural person would have, if baptized, or a corporation, if a particular name were given to it by its charter.

The society is a corporation, but has no name acquired otherwise than by assumption or reputation : the other body is not incorporated, and therefore can have no name, unless acquired in the same way, although it may be described, by a known term or word in our language, of which such an association of persons is the definition.   And in fact, the term *church,* as applicable to the latter body, seems to have been intended rather to describe its character than its name.   This, therefore, rather resembles a case where the instrument describes one body by name, and another by its character or

occupation, than one where both are described by their proper name or appellation. If so, it would be similar in principle to the devise to *the American Tract Society,* in the case of *Brewster & al.* v. *McCall's Devisees.* But however that may be, we have no doubt that the case presents a latent ambiguity, explainable by parol evidence of the testator's intention.

The remaining question is, whether the testimony offered by the defendants, for the purpose of such explanation, was properly admitted. The rule, in these cases, is well settled, that the object being to discover the intention of the person speaking, any testimony is admissible for that purpose, which is relevant upon the general principles of evidence. Any fact or circumstance, which, from experience or observation, may fairly be presumed to have had an influence on his mind in inducing him to prefer one of the persons described by him to another, is admissible to prove his intention. On this principle, evidence to show, that the devisor had long been a member of the society, and contributed very liberally to its support, was considered relevant ; and its admission is expressly sanctioned, by the case of *Brewster & al.* v. *McCall's Devisees.* With regard to the evidence that the devisor, in speaking of the affairs of the society, always called it *the church,* we think that it was admissible, for the purpose of ascertaining the meaning of the testator in using that term in his will. That he was in the habit of using that term in a particular sense, is a circumstance attending him, which may lead to a correct interpretation and application of his language, and is proper to be considered for the purpose of explaining and evolving his meaning. In *Hiscocks* v. *Hiscocks,* 5 *M. & W.* 353. which was a case of latent ambiguity, Lord *Abinger* says, " The testator may have habitually called certain persons or things, by peculiar names, by which they were not commonly known. If these names should occur in his will, they would only be explained and construed, by the aid of evidence to show the sense in which he used them, in like manner as if his will were written in cypher, or in a foreign language. The habits of the testator, in these particulars, must be receivable as evidence to explain the meaning of his will." See also *Cowen's notes to Phillipp's Ev.* 1374. and the

cases there cited. *Greenleaf's Ev. pt.* 2. *ch.* 15. 2 *P.* <span style="float:right">*Fairfield,*<br>June, 1844.</span>
*Wms.* 140.

Ayres<br>*v.*<br>Weed.

For these reasons, a new trial should not be granted.

In this opinion, the other Judges concurred.

New trial not to be granted.