FREDERICK A. KING, EXECUTOR, *vs.* MARY GRANT AND OTHERS.

Hartford Dist., Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

A will directed that the property be sold by the executor and the proceeds safely invested by him, and that the income of the fund, and so much of the principal as might be needed for the support of his wife, go to her during her life; and that, after her decease, the income from the investments should be divided equally among the sister and two nieces of the testator, one third to each, as long as they should remain unmarried; and that whatever remained after the death of each of the last named relatives, should go to the Second Ecclesiastical Society, "to help in the support of preaching so long as such is kept up as at present." Held—

1. That the three legatees, to whom the income of the investments was given after the death of the wife, took the income of the entire estate, and not of that part only which had been invested by the executor.

2. That the marriage or death of either of these legatees affected only her rights, and not those of the others.

3. That the bequest "to help in the support of preaching so long as such is kept up as at present," was not void for uncertainty.

4. That by that expression was meant the continuance at that place of the religious services of the congregational denomination, to which the society in question belonged, substantially as they were kept up at the time the will was made.

5. That the bequest to the "Second Ecclesiastical Society" must be regarded as intended for the Second Ecclesiastical Society in South Windsor, that being the society to which the testator belonged.

6. That one third part of the estate vested in the ecclesiastical society on the marriage or death of each of the three legatees mentioned.

[Argued November 11th—decided December 17th, 1886.]

SUIT for the construction of the will of George Foster; brought to the Superior Court in Hartford County. Facts found and the case reserved for advice. The case is fully stated in the opinion.

*C. M. Joslyn* and *E. H. Hyde, Jun.*, for the defendants Mary Grant and Mary H. Francis.

*J. J. Jennings*, for the defendant Frances A. Atkins and the heirs at law.

*J. R. Buck* and *A. F. Eggleston*, for the Second Ecclesiastical Society in South Windsor.

PARK, C. J. The object of this suit is to obtain a judicial construction of the will of one George Foster. Foster left no children. His wife died soon after the execution of the will and about two years previously to the death of the testator.

The second clause of the will directs the executor to sell the real estate and effects of the testator, if not sold by him before his death, and safely invest the proceeds thereof; and the testator gives the income of the investments, together with so much of the principal as may be needed, for the "support, care and comfort" of his wife "during the remainder of her life."

The third clause of the will is as follows: "After the decease of my wife I hereby will and direct that the income from said investments be divided equally between my sister, Mary Grant, and my nieces, Mary Francis and Mrs. Francis Atkins, one third to each, as long as they remain unmarried."

The fifth clause is as follows: "I will and direct that after the previous gifts have been fully met, or at the death of each of the previously noticed relatives, whatever remains of said investments be turned over to the Second Ecclesiastical Society, to be used under a trustee to help in support of preaching, as long as such is kept up as at present."

The executor asks the advice of this court regarding the proper construction to be given to the second, third and fifth clauses of the will, and submits for our consideration the following questions:

1. Do the legatees named in the third clause of the will take only the income from the investments made by the executor, or the income from the whole estate?

2. Will the right to the income of each and all the legatees named in the third clause of the will cease and determine upon the marriage of either of them?

3. Is the gift attempted to be made in the fifth clause void for uncertainty?

4. Which Second Ecclesiastical Society is intended as the legatee under the fifth clause?

5. When does the estate given in the fifth clause, if any, vest in and become payable to the legatee? At the death of all the previously noticed relatives? or at the death of the first one? or does an undivided one third part of the estate vest in the legatee at the death of each?

The cardinal rule, which governs courts in the construction of wills, is the intent of the testator, made manifest by the will. Applying this rule to the present case, it is clear that the testator intended to dispose of all his property by the will; and when he uses the expression, "all my real estate and effects," he means all his real and personal property. He intended that his executor should turn into money all his property that might remain at his death in

some other form than investments, and safely invest the amount, so that all his estate should be in money-producing investments.

The testator had no children, and his first and highest object was to make ample provision for the support and comfort of his wife, without subjecting her to any responsibility in managing the estate. He intended that she should have the income of his whole property, and lest the income derived therefrom might not be ample for the purpose, he provided that she should have so much of the principal of the estate as, together with the income, should be needed for her " best support, care and comfort."

It seems absurd that the testator should limit his wife's income to that derived from the investments that should be made by his executor, when it was wholly uncertain how much of his property would thus be invested, for he intimates in his will that he himself may invest all his property before the will shall take effect, thus, upon the construction claimed, leaving his wife without any income, when it clearly appears that she was the principal object of his solicitude and bounty.

We think it is clear that the direction of the testator to his executor to turn all his property, that might remain at his decease uninvested, into safe investments, was wholly owing to his desire that all his property should become productive of income, and had no reference whatever to any amount of income that his wife should have from his estate.

Such being our construction of the second clause of the will, it follows, as a necessary consequence, that after the death of the wife the income from the property, to the same extent as was previously given to the wife, was now given to be equally divided between the persons described in the third clause of the will, so long as they should remain unmarried. We therefore answer the first question submitted for our consideration, that the parties named in the third clause of the will take the income of the entire estate.

We answer the second question submitted by saying that we think it is absurd to suppose that the testator intended

to make the rights of one of the parties named in the third . clause, dependent upon the celibacy of either of the others, or that he intended to punish them all for the marriage of one; and therefore, we think, the marriage of one of the parties will only affect the rights of the one marrying, and not those of either of the others.

We think the gift in the fifth clause of the will is not void for uncertainty.

It is claimed that the phrase, "to help in the support of preaching, so long as such is kept up as at present," being a part of the bequest, renders the whole void for uncertainty. The bequest was made to a denomination of christians called congregational. It is well known that that denomination has a particular mode of worship, and a particular set of religious doctrines. The testator was a regular attendant of the Second Ecclesiastical Society of South Windsor, which was a congregational society, and had been ever since its organization. To this society the bequest was made. It is evident that all the testator meant by the phrase was, that the legacy should be enjoyed so long as the religious services by the congregational denomination of christians should continue to be held at that place, substantially as they were at the time the will was made. If at any time in the future a question should arise whether the society was entitled longer to the benefit of the bequest, the court can then determine the matter.

The facts of the case clearly show that the bequest was intended to be made to the "Second Ecclesiastical Society in South Windsor," but by mistake or inadvertence the testator described the society as the "Second Ecclesiastical Society." It is claimed that the bequest is void for this reason. The case finds that there is but one Second Ecclesiastical Society in the town of South Windsor, the corporate name of which is "The Second Ecclesiastical Society in South Windsor." The testator omitted a part of the name, but we think the facts of the case so clearly show what society was intended, that the bequest is not void for uncertainty. In *Jacob's Executors* v. *Bradley*, 36 Conn., 365,

a legacy to " The Episcopal Society in Hamden," was held to be a good legacy to Grace Church, that church being the only Episcopal society in that town. In *Brewster* v. *McCall's Devisees*, 15 Conn., 273, a bequest to " The Missionary Society of Foreign Missions," was held to be a bequest to " The American Board of Commissioners for Foreign Missions." See also, *Ayers* v. *Weed*, 16 Conn., 301.

We therefore answer the fourth question by saying that the Second Ecclesiastical Society in South Windsor was intended as the legatee in the fifth clause of the will.

In answer to the fifth inquiry we say, that one third part of the estate vests in the Second Ecclesiastical Society in South Windsor on the marriage or death of each of the parties described in the third clause of the will, and should in that event be delivered to the society.

In this opinion the other judges concurred.