ANN SMITH, GUARDIAN, AND OTHERS : APPEAL FROM PROBATE.

New Haven and Fairfield Cos., Jan. T., 1892. CARPENTER, SEYMOUR, TORRANCE, FENN and ROBINSON, Js.

The rule of the common law as to who might be executors, was, that all persons might be who were mentally capable of executing the trust or were not specially disqualified.

Where a testator appoints an executor out of the class recognized by the common law or by statute as capable, the probate court cannot reject the person so appointed except in cases where the law has specially so provided.

By section 549 of Gen. Statutes, enacted in 1885, the statute authorizing courts of probate to appoint an administrator with the will annexed in the place of an executor named in the will, was changed by adding to the causes of rejection the following—" or be incapable to accept the trust." Held that a want of integrity or of business experience could not be regarded as a sufficient ground for rejecting a named executor under this clause of the statute.

[Argued January 26th—decided February 29th, 1892.]

APPEAL from a probate decree, refusing to approve the

appointment of an executor named in a will, and appointing an administrator with the will annexed; taken to the Superior Court in New Haven County. The court (*Thayer, J.,*) reversed the probate decree and the appellees appealed to this court. The case is fully stated in the opinion.

*G. E. Terry* and *L. F. Burpee,* for the appellants (original appellees.)

1. Many of the early cases and many of the statements in text-books are based upon the fact that, under the common law, any person except an idiot or lunatic was deemed capable of acting as executor. But legislation, both in England and the United States, has been constantly adding to the number of causes of disqualification, and limiting the number of those who may accept such trusts. The old doctrine that the testator had an absolute and sacred right to appoint a trustee of his own liking, has proved unsatisfactory. It is the modern opinion that the execution of the will is rather to be considered than the giving of a lucrative office to any person, and the interests of legatees and creditors are to be promoted rather than the gratification of the testator's caprice in selecting his executor. Accordingly, in New York and California, it has been provided that no person is competent to serve as executor who is under twenty-one years of age, an alien, or who has been convicted of infamous crime or habitual drunkenness, or who is lacking in understanding or integrity. In Massachusetts the words of the statute are, "where no executor shall be named, or otherwise incapable to discharge his trust, or evidently unsuitable therefor, the judge of probate may," etc. In New Hampshire no person may be appointed who is "deemed incapable." Schouler's Exrs. & Admrs., § 33; 1 Woerner's Exrs. & Admrs., § 233.

2. In this state, previous to the revision of the probate laws in 1885, the court of probate had the power to grant administration with the will annexed only "upon the refusal of the executor to accept the trust or to give bonds." (Stat. 1875, p. 371, § 12.) The revision of 1885 provided

that, " if no executor be named in the will, or if the executor named shall have died, or shall refuse or be incapable to accept said trust, or to give bond, the court shall commit the administration," etc. This is the statute now in force. Gen. Stat., § 549. Manifestly this statute was intended to enlarge the discretionary power of the court of probate, as well as to add to the requirements upon those who apply to be made executors. The court may find an applicant incapable. Must that incapability arise from physical and mental disqualifications only, or may it be caused as well by want of common honesty? The answer to this question will be of great importance. It has not before, we believe, been considered by the courts of this state under this statute, but certain decisions of this court will, by analogy, furnish reasoning which will apply to this case. In *Wilcox's Appeal from Probate*, 54 Conn., 320, the subject was the appointment of certain persons as trustees of a testamentary trust and the refusal to appoint other persons. The will, so far as material, was as follows : " Should a vacancy occur of a trustee as above named, by death or otherwise, it is my will that a trustee to fill such vacancy shall be nominated to the judge of probate by at least one third of the devisees above named, and in like manner from time to time as such vacancy may occur, so that there shall be at all times at least two trustees during the continuance of said trust to have charge of said trust fund." This court decided that the testamentary mode of appointing such trustee was valid, and that it existed in this case to the exclusion of the statutory mode. It will be observed that this testamentary provision was clearly expressed, to the effect that the trustee nominated by one third of the devisees should be appointed. No restriction or condition concerning his mental or moral qualifications was made. Nevertheless this court decided that the probate court might reject the nominee for any cause impeaching his integrity or capacity. (See p. 325.) The word " incapable " has long been used in the statutes of this state relating to the appointment of conservators. Its meaning under this statute was indicated in *Wickwire's Appeal*

*from Probate*, 30 Conn., 86. It was there decided that evidence to show that incapacity had arisen from debauched habits and immoral conduct was properly admitted, and that the Superior Court had properly found incapacity from such evidence. The statute of New Hampshire is almost identical with ours. The Supreme Court of that state declares that the word " incapable " cannot be limited in its application to mere mental or physical incapacity, but must be understood to include the idea of unfitness or unsuitableness. *Drew's Appeal*, 58 N. Hamp., 320.

3. It is believed that the tendency of legislation and decision has been distinctly toward the recognition of two classes of disabilities, namely, absolute disabilities and discretionary disabilities. Croswell on Exrs. & Admrs., §§ 103, 104. Thus, as is universally admitted, if the court of probate finds that an applicant for appointment as executor has refused to accept the trust or to give bonds, or, in some jurisdictions, has been convicted of infamous crime, the court is obliged to refuse the appointment. Such disabilities are absolute. But the disabilities arising from want of capacity are left to the discretion of the court. If the applicant is found to lack mental capacity, it is nowhere questioned that the court may refuse the appointment. It seems absurd to say that, while the court may reject an applicant who is not smart enough to preserve the estate and properly distribute it, it cannot reject an applicant who is not honest enough to preserve and properly distribute it. In every case the primary purpose of the law is to secure to the objects of the testator's bounty what he intended them to receive. If the partiality or ignorance of the testator has blinded him to the mental defects of the executor whom he has selected, the court of probate may wisely overrule the choice. But if the partiality or ignorance of the testator has blinded him to the moral defects of his executor, is it reasonable to decide that the court may not interfere ? Will the interests of creditors and legatees be less in danger in the latter case than in the former ? Executors are only executive officers, and the duty of the court should be to see that they

are suitable in every respect to perform the duties for which the office was made. In this case, it should be noticed, the testatrix's chief desire was to divide her property among her children and grandchildren. She nominated Smith as her executor to do this, and directed that no bond be required. Now the court of probate decides that he is not a man of honesty and integrity. If, then, this dishonest man, without bonds, gets possession of the estate, there is no reason to suppose that her purpose will be accomplished. The object of the testatrix, the interest of the legatees, and the protection of the law, will all be made of no value.

*W. H. Williams*, for the appellees (original appellants.)

TORRANCE, J. Shortly after the will of one Bridget Smith had been admitted to probate, Bryan J. Smith, a son of the deceased, of full age and of average mental capacity, who was appointed executor by the will, appeared before the probate court and offered to accept said trust, to qualify as such executor and to give bond as required by law. The court of probate found that he was not a fit person to execute the trust, refused to approve of his appointment as executor under the will, and thereupon, all of the next of kin having refused to accept the trust, appointed one Cassin as administrator with the will annexed, of said estate. From these two decrees an appeal was duly taken to the Superior Court. In the reasons of appeal filed in that court the above stated facts were in substance set forth.

To the reasons of appeal, the appellees in the Superior Court filed this answer:—" 1. The said Bryan J. Smith, who was named as executor of the will of the said Bridget Smith, deceased, was incapable to accept said trust, because he was not a man of honesty and integrity and experience in business affairs.—2. The said court of probate appointed said James J. Cassin to be administrator with the will annexed, because all of the next of kin of the deceased, except the said Bryan J. Smith, neglected to appear and refused to accept said trust."

The appellants in the Superior Court demurred to this answer, on the ground that the matters therein alleged afforded no justification for the action of the court of probate, were irrelevant and immaterial, and did not show any want of mental capacity in said Smith to accept said appointment as executor. The Superior Court sustained the demurrer, and subsequently rendered judgment, setting aside the action of the court of probate in the premises. The present appeal is brought to review this action of the Superior Court.

The claim of the present appellants is, that the Superior Court erred in holding that Smith was not incapable of accepting the office of executor under the facts admitted by the demurrer; and whether the court did or did not err in so holding is the principal question in the case.

In the brief of the present appellants it seems to be conceded that, prior to 1885, the court of probate would have had no power to refuse to approve of the appointment of an executor merely for the causes alleged against Smith. But it is claimed that the power of the court in matters of this kind was enlarged by the changes made in the revision of the probate laws in 1885.

The statute bearing upon the question under consideration, as it appears in the revision of 1875, reads as follows:— "Upon the refusal of an executor to accept the trust or to give a bond, the court shall commit the administration of the estate, with the will annexed, to the widow or next of kin of the deceased," etc, etc. Revision of 1875, p. 371, sec. 12.

Prior to 1885 this statute, in substantially the same form, had remained upon the statute book for nearly two centuries. In the year 1885, in the revision of the probate laws, it was made to read as follows:—" If no executor be named in the will, or if the executor named therein shall have died, or shall refuse or be incapable to accept the trust, or to give a bond, the court shall commit the administration of the estate with the will annexed to the husband," etc, etc. Pub.

Acts of 1885, ch. 110, sec. 141. In this form it now appears as section 549 of the present General Statutes.

It will thus be seen, that, so far as the present case is concerned, the only change made in the law was made by inserting the words " or * * * be incapable to accept the trust," and upon the construction of these words the decision of the case at bar must rest.

The present appellants contend that if a person is lacking in honesty or integrity or business experience, or at least if he is lacking in all three, he is to be deemed " incapable to accept the trust," within the meaning of this statute. We think this claim is not well founded.

It should be remembered that, independently of any statute upon the subject, the rule of the common law was that all persons might be appointed as executors who were mentally capable of executing the duties of the trust, or, as it is otherwise stated, who were capable of making a will, or were not specially disqualified. *Stewart's Appeal from Probate*, 56 Maine, 300; Schouler's Exrs. & Admrs, § 32; Redfield's Law of Wills, part 3, chap. 2, § 3. This general rule has been modified by statute in some of our states.

It is also, we think, quite clear upon principle and authority that where a testator appoints an executor out of the class recognized, either by the common law or by statute, as capable of accepting and performing the duties of such a trust, the court invested with authority to admit the will to probate cannot reject the person so appointed, or refuse to approve of the appointment, except in cases where the law has specially so provided.

In a case decided in New York, in 1864, under a statute of that state, Judge JOHNSON uses the following language: —" I am of the opinion that any person appointed or named executor in a will is to be deemed to be competent unless he is declared incompetent by statute, and that it is the duty of the surrogate to grant letters to every person named executor in a will, upon his application, who is not declared incompetent by some statute. He has no discretion to exercise in the matter, but must obey the requirements of the

statute, which is the sole source of his power. To allow surrogates to invent new causes of disqualification and add to those prescribed by statute, would be conferring novel and dangerous powers upon those officers of special and limited jurisdiction." *McGregor* v. *McGregor*, 3 Abb. App. Decis., 92.

In the same case Judge DENIO said:—" The selection of executors is not committed to the surrogate's court. The testator is allowed to appoint such persons as he may select, provided they do not fall within the classes of incompetent persons mentioned in the statute."

In a Kentucky case decided in 1851, the court says:—
" The moral unfitness of the person appointed as executor of a will cannot be inquired into by the court to which he applies for permission to qualify. He derives his office from testamentary appointment, and if he is a person not disqualified by law from being an executor, the court has no right to refuse to permit him to qualify or to refuse to grant him letters testamentary." *Berry* v. *Hamilton*, 12 B. Monr., 191.

" One is not disqualified from acting as executor on account of crime. He may act in that capacity although attainted or outlawed under the English law. Nor does immorality or habitual drunkenness, by the American practice, disqualify one to act in that office." Redfield's Law of Wills, art. 3, chap. 2, § 8.

So far as we are aware these citations are in substantial agreement with our own law upon this subject. Thus SWIFT says:—" Every person who is capable of making a will may be appointed an executor." 1 Swift's System, 423. In his digest Judge SWIFT. says:—" An executor is a person appointed by the testator to carry his will into effect. Any person may be appointed an executor excepting an idiot or alien enemy." 1 Swift's Digest, 442.

From a very early period our statutes on this subject have made the power of the court of probate to appoint, in the first instance, an administrator with the will annexed, to depend upon the refusal, express or implied, of the executor named in the will to accept the trust; and they have always

contained provisions of a more or less stringent nature, whose object was to compel the executor to produce the will and to accept or refuse the trust.

Down to 1885, as we have seen, the statute in terms permitted the court of probate in the first instance to appoint an administrator with the will annexed, only in case the executor named in the will refused to accept the trust or give bond. Under this statute it was doubtless within the power of the court of probate to refuse to approve of the appointment of one as executor who was by common law disqualified to act as such, but even this is perhaps left somewhat in doubt by the terms of the statute. Of course a refusal to accept might, under certain circumstances, be implied. *Ayres* v. *Weed*, 16 Conn., 291; *Solomon* v. *Wixon*, 27 id., 520.

It is obvious, however, that in cases where a will has been proved, contingencies, other than the mere refusal of the executor to accept the trust, might exist which would equally make the appointment of an administrator necessary. The will might not contain the name of any one as executor; the executor, if named, might have died before the will was probated; or if named and living, might be incapable to accept the trust. This last contingency may arise from two causes. The person named in the will might be by law disqualified to be an executor. In such case, as we have intimated, the terms of the old statute left it doubtful, perhaps, whether the court of probate could commit the administration of the estate to another. If qualified by law to act as executor, his condition or circumstances at the time when it became his duty to accept or refuse the trust, might be such that he could not legally manifest or declare his acceptance thereof, and yet, at the same time, it might well be impossible to imply a legal refusal from his neglect or failure to accept. Such cases may easily be supposed, and doubtless had occurred in actual practice, giving rise to doubt and uncertainty as to the course to be pursued under such circumstances.

It was, we think, to cover these two classes of cases, and

to put an end to all doubt as to the power of the probate court to commit the administration of the estate, under such circumstances, to a person other than the one named in the will, that the words "incapable to accept the trust" were inserted in the statute.

The present appellants construe them as adding to the list of matters which disqualify persons from being executors at common law, certain other matters of the nature of those alleged in the case at bar. The trouble with such a construction is, that it leaves the court of probate to determine what such other disqualifying matters are, after the testator has made his choice. The statute has not defined them, nor indicated in any way what they are. The court, rather than the law, will thus largely determine who may be executors.

Then too, the test of moral fitness or want of business experience is a very variable test. The question will ever be largely one of degree, and different men will differ, both as to the test to be applied, and as to the kind or degree of immoral character or reputation or want of business experience which will render a person "incapable to accept the trust."

Then again, the trial and decision of questions of this nature is a task of no little delicacy and difficulty. Upon this subject the court of Kentucky, in a case from which we have already quoted, says:—" If the opinions of men in regard to the moral character of those who may be appointed executors, and in whom testators repose confidence, whatever those opinions may be, are to be received, and are to constitute the evidence by which, in law, we are to ascertain who may and who may not be appointed executors, we apprehend that but few appointments would fail to be contested by some of the relatives of testators, who are often too easy to be dissatisfied, or by persons who themselves desire to be administrators for personal aggrandizement, or who would rejoice in so fitting an opportunity to gratify some private hatred. Such inquiries would involve questions of very difficult and doubtful decision, such as, how good a man must be to qualify him for an executor, and how bad he must be to

disqualify him. How could any certain rule of determination be established? Inquiries of such a nature would be the most vague and uncertain in their results of any ever instituted in a court of justice, and would, in our opinion, be absurd in the extreme." *Berry* v. *Hamilton*, 12 B. Monr., 191.

Prior to 1885, certainly, the law and not the court of probate determined who should and who should not be executors, and it defined beforehand with tolerable clearness the matters that disqualified a person from being an executor. It also, to say the least, regarded with a good deal of favor the right of a testator to choose his executor from the class not disqualified. The construction contended for would radically change the law in all these respects. It seems to us this would be a violent construction to put upon the language used. Had the legislature intended to make so radical a change in our law, it would have used words much better adapted to convey such a meaning than the language now under consideration.

For these reasons we cannot adopt the construction contended for by the present appellants, and think the construction we have adopted will give full force and effect to the intention of the legislature in putting into the statute the words "incapable to accept the trust." If the persons appointed and approved of as executors, under our construction of the law, prove to be incapable of executing the trust, or shall neglect to perform the duties thereof, or shall waste the estate, ample power is given for their removal and the appointment of better men in their stead.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.