ST. ANDREW'S CHURCH OF TECUMSEH, NEBRASKA, AP-
PELLEE, V. MICHAEL SHAUGHNESSY ET AL., APPELLANTS.

FILED FEBRUARY 6, 1902. No. 9,850.

Commissioner's opinion, Department No. 2.

1. Appeal: RECORD: PLEADING: EVIDENCE. Upon appeal in an ac-
   tion in equity, this court must take the evidence as it is in the
   record, and determine whether the decree appealed from can
   be supported upon the pleadings and evidence as taken in the
   lower court.

2. Corporation: MEMBERS: RIGHT OF MINORITY. A minority of the
   members of a corporation organized under the act of 1883,
   entitled "An act for the incorporation of churches and parishes
   and religious societies," have no right to retain possession of
   the corporate property, as against the corporation itself, for
   the purpose of compelling the corporation to recognize their
   rights as members.

APPEAL from the district court for Johnson county.
Heard below before LETTON, J. *Affirmed.*

*Samuel P. Davidson* and *W. H. Kelligar,* for appellants.

*Sawyer, Snell & Frost, contra.*

SEDGWICK, C.

This action was begun in the district court of Johnson
county by the plaintiff, St. Andrew's Church of Tecumseh,
to enjoin the defendants from intermeddling with the
church property, and from hindering the plaintiff church,
and the members, comprising the plaintiff corporation, in
the enjoyment of their rights and franchise, and from in-
terfering with the right of the pastor of the church to use
and occupy the parsonage and to occupy the pulpit of the
church, and from excluding the plaintiff and the members
of the plaintiff corporation and communicants from the
church building, and from interfering with them in cele-
brating divine worship in the church, and to require the
defendants to surrender to the plaintiff the key to the par-

sonage and church building, and all other property of the
plaintiff in their possession, with a general prayer for
equitable relief.  The answer admits that the defendants
hold the property and exclude plaintiff therefrom, and at-
tempt to justify so doing.  There was a trial by the court,
and general findings for plaintiff, and decree granting the
relief prayed.  The defendants appeal to this court.

It is established by the pleadings and evidence
and admissions of the parties that for some time
prior to the year 1883 the Catholic church of Tecum-
seh existed as an organized church, but unincorporated,
and as such unincorporated church society it acquired
the property in controversy, and the members of the
church society constructed the buildings and furnished
the property now in dispute.  The money for this pur-
pose was raised by voluntary subscriptions among the
members and donations from other friends.  In the year
1886, in accordance with the desire of the membership
of the church and the church authorities, the church
was incorporated under the act of the legislature of
1883, entitled "An act for the incorporation of churches,
parishes, and religious societies."  Session Laws, 1883,
p. 177.  In pursuance of the provisions of the statute the
bishop of the diocese, which then comprised the state, the
vicar general, and the parish priest of the Tecumseh church,
and two members of the church society who were selected
by the society itself, convened at Omaha, and duly incor-
porated.  The corporation so formed took the property in
question, and it is admitted that it is still the owner of
the title of the property in fee.  The by-laws of the corpo-
ration provided that "the corporate powers of this corpo-
ration, except as otherwise provided by law, shall be exer-
cised in all things in conformity with the principles and
discipline of the Roman Catholic Church existing in the
United States of America, and in conformity with the dis-
ciplinary statutes of the diocese of Omaha.  This church
is always bound to receive as pastor thereof, and as such
members of such corporation as is provided in the articles

of incorporation, such priest as the Rt. Rev. Bishop of the
Diocese, or, in his absence, Administrator of the Diocese,
may from time to time appoint. When any pastor thereof
shall be removed by the Rt. Rev. Bishop, Vicar General, or
Administrator of the Diocese, such pastor shall cease to be
a member of this corporation, and shall no longer be recog-
nized as pastor." After the corporation was organized,
the diocese was divided so that the portion of the state
south of the Platte became the diocese of Lincoln, and the
present Bishop Bonacum became the bishop of the diocese,
and the parish in which St. Andrew's church of Tecumseh
is situated became subject to his jurisdiction. The bishop
appointed Father Murphy the priest of the parish, or
rector, of St. Andrew's church, and after he had served for
a time he was removed by the bishop and appointed to a
new mission. The bishop then appointed Father Carriker
to be the priest of the parish, but Father Murphy, for some
reason not disclosed in the evidence, refused to acquiesce
in this action of the bishop, and the bishop notified the
communicants of the church that Father Murphy was act-
ing without right, and that the Rev. Father Carriker was
properly constituted priest, and was qualified with au-
thority to minister in spiritual matters to the congregation.
Father Murphy appealed from the order of the bishop,
and, his appeal having been determined against him, left
the parish and accepted another mission. The defendant
Michael Shaughnessy, who was one of the original incorpo-
rators, and the defendant Michael Murphy, who appears
to have been selected by a vote of the church membership
to act as lay member of the corporation, refused to allow
the new appointee of the bishop to act as priest of the
parish and to obtain possession of the church and parson-
age, and after some trouble over the matter Father Carri-
ker found other quarters for his home and for the church
services, and a part of the congregation attended his serv-
ices and supported him, but the larger part attended the
services at the church, which were conducted by Father
Murphy, and after he had accepted another mission no serv ·

ices were held in the church. When Father Murphy left the parish he appears to have delivered the keys of the church and parsonage to the defendant Michael Shaughnessy who locked the church and parsonage and, against the authority of the bishop, refused to allow his appointee the use of the property.

The defendants say in their brief: "The only real contention or controversy between this people and the bishop is as to the right of the people to select their lay-trustees. Whenever the bishop is made to submit to this right on the part of this people, they are willing and offer to comply with every other request legitimately made of them, without any judgment of this or any other court." The contention seems to be that these defendants Shaughnessy and Murphy are in fact the two lay members of this corporation, and that the bishop in refusing to recognize them as such, and in attempting to appoint others in their places, has so far violated the rights of the body of communicants composing the St. Andrew's church of Tecumseh as to justify those communicants, through the two lay members of the corporation appointed by them, in excluding the bishop and his appointee from the use of the church and property. The proposition that Shaughnessy and Murphy would have the right to exclude the bishop and his appointees from the use of the property until the bishop should recognize them as members of the corporation can not be sustained. There is no doubt that the bishop, the vicar general, and the priest appointed by the bishop constituted the majority of the corporate members. Whatever may have been the rights of the communicants and body of church members at the time this corporation was formed, it is conceded by all parties, in the pleadings and in the evidence, that this corporation was formed for the purpose of taking and holding the property in question, and also for the purpose of controlling the use of the property in accordance with the policy and usages of the Roman Catholic church as organized in the United States of America. Indeed, it is admitted that this corporation owns all of the property in

question.   The communicants and body of church mem-
bers of the local church participated in the organization
of the corporation, and in transferring this property to the
corporation so organized, and there can be no doubt of the
right of the corporation to control the use of this property.
It is alleged in the answer that an attempt has been made,
and that there is danger that it will be renewed, to convert
this property, and to divert it from the purposes for which
it was intended.   The trial court excluded the evidence
tending to support these allegations, and therefore we can
not consider this question.   We do not want to be under-
stood as recognizing the right of the corporation, or any
of its members, to so convert the property, nor to intimate
that a court of equity in a proper proceeding would not
prevent such conversion; but there is no evidence upon this
point in the record, and whether the court did right in
excluding this evidence can not be determined on this ap-
peal.   By the settled practice of this court, questions that
may arise upon the rulings of the trial court in admitting
or excluding evidence can only be presented to this court
by proceedings in error.   Upon appeal, this court must
take the evidence as it is, and determine whether the de-
cree is right upon the pleadings and evidence as taken in
the lower court.

The trial court also refused to determine the question
as to whether the defendants Shaughnessy and Murphy
were members of the corporation, and as such entitled to
participate in the management and control of the property.
As the articles of incorporation and by-laws provide that a
majority of the five members of the corporation may act
for the corporation in the control of its property and af-
fairs, and a majority concurred in the appointment of the
successor of Father Murphy, it seems to be immaterial to
this controversy whether the defendants Shaughnessy and
Murphy, or the two members who were appointed by the
bishop as their successors, were entitled to act as the lay
members of the corporation, and therefore the refusal of
the court to determine that question does not affect the

merits of this appeal. Nor is it necessary to construe the
language of the articles of incorporation and the by-laws
relating to the selection of these lay members. The prop-
erty in question belongs to the corporation, and is com-
mitted to its custody and control. Under the organization
of this church corporation, the appointment and removal
of its local or parish priest is committed to the bishop.
The priest so appointed is a member of the corporation,
and, with the consent of a majority of the members of the
corporation is the authorized representative of the Roman
Catholic church. Under the evidence in this record, the
five members of this corporation, or a majority of them,
are responsible for the care and custody. of the church
property, and its use as contemplated in accordance with
the usages of the Roman Catholic church.

It is therefore recommended that the decree of the trial
court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the decree of the trial court is

AFFIRMED.

NOTE.—*Church.*—*Society.*—*Corporation.*—*Congregation.*—*Parish.*—*Devise.*
—*Schism.*—*Church Property.*—It is, we think, a matter of common
observation that the terms "church" and "society" are popularly
used to express the same thing, namely, a religious body organized
to sustain public worship. *Society v. Hatch,* 48 N. H., 393, 396.

A statute prescribed that it should be lawful for the male persons
belonging to any "church" to choose the trustees. The whole statute
has reference to religious associations. A church (*ecclesia*) may be,
first, a temple or building consecrated to the honor of God and re-
ligion; or, second, an assembly of persons united by the profession
.of the same christian faith, met together for religious worship.
These give the legal, though the word has many popular definitions.
In the statute, to which reference has been made, it appears to be
used in the sense of the second of the foregoing definitions. *Robert-
son v. Bullions,* 9 Barb. [N. Y.], 64, 95, affirmed 11 N. Y., 243.

In one sense (and the common sense) the word "church" is under-
stood to mean a number of christian persons, agreeing in their faith,
usually assembling together at one place, for purposes of worship—
submitting to its ordinances, and receiving its sacraments. This is

entirely distinct in meaning from the word "church" as applied to a corporation. In the former sense of the word, many persons are usually members of the church, and most commonly a large majority, who neither are or can be members of the corporation,—married women, infants, etc. When persons are incorporated by the name of "church," this can be regarded only as a name of designation, or at most, as indicating, when property is given to them, the trusts upon which it is given. *Wilson v. Presbyterian Church*, 2 Rich. Eq. [S. Car.], 192, 198.

Distinction between congregation and church pointed out in *First Baptist Church v. Wetherell*, 3 Pai. Ch. [N. Y.], 296, 301.

Where a testator devised his estate to the Protestant Episcopal church in New Canaan, parole evidence was held admissible to show that the terms "church" and "parish" were by this denomination of christians used indiscriminately, and in the same sense as society. *Ayres v. Weed*, 16 Conn., 291.

For meaning of *parochia*, or parish, see *Baker v. Fales*, 16 Mass., 487, 498.

"As between two opposing factions of a religious association, land acquired by the association before any schism arose will be adjudged the property of that faction which abides by the doctrines, principles and rules of church government which the united body professed when the property was acquired." *Reorganized Church of Jesus Christ of Latter Day Saints v. Church of Christ*, 60 Fed. Rep., 937.— REPORTER.