JOHN E. THAYER *vs.* FITZHENRY HOMER & another.

The provision in the Rev. Sts. *c.* 63, § 7, that "when any executor shall become insane, or otherwise incapable of discharging his trust, *or evidently unsuitable therefor*, the judge of probate may remove him," gives a discretion to the judge to accept the resignation of an executor and remove him, on the ground that the prosecution of his individual claims on the estate of the testator would conflict with his duties as executor; and the decree of a judge of probate, removing an executor on such alleged ground, if not appealed from, is conclusive in a collateral suit.

THIS was an action to recover damages for an alleged breach of a covenant in a deed executed by the defendants (Fitzhenry Homer and Philo S. Shelton) on the 14th of June 1844, whereby they conveyed to the plaintiff, for the consideration of $50,000, a parcel of land, with the buildings thereon, situate at the corner of Beacon and Walnut Streets, in Boston, to hold to him and his heirs and assigns forever. In this deed the defendants covenanted that they had good right to sell and convey said premises to the plaintiff, having lawful authority, and being duly empowered thereto, under the last will of Benjamin P. Homer. The case was submitted to the court on the statement of facts which follows:

Benjamin P. Homer died in April 1838, leaving a will, in which he authorized and empowered his executors, or such of them as should take upon themselves the probate of the will, to sell and convey, and to execute good and sufficient deed or deeds to convey, all or any part of his real estate, (except such as was in said will specifically devised,) either by public auction or private contract, at the discretion of said executors, for the best price they could obtain, and at such times as they might think proper. The defendants were appointed executors of said will, and proved it in the probate court for the county of Suffolk, took upon themselves the execution thereof, and gave bond. On the 16th of June 1838, said Fitzhenry Homer presented to the judge of probate a writing, in which he stated that a question had arisen upon the proper construction of said will, whether he (the said Fitzhenry) might and could take and hold his share of the

estate of the testator, under said will, absolutely and in his own right, or whether the same was subject to certain limitations and trusts ; and that, in order that said question might be considered and determined, it would be necessary to institute legal proceedings, in which the said Fitzhenry's claim, in his individual capacity, would conflict with his duties as one of the executors under said will : He therefore prayed that he might be permitted to resign his said trust as executor, and that he might be discharged therefrom, so far as respected all further proceedings. The devisees of said Benjamin P. Homer were his two daughters and the said Fitzhenry ; and the husbands of his daughters, viz. the defendant Shelton and Thomas Dixon, certified to the judge of probate that they had received notice of said Fitzhenry's petition to be discharged from his trust as executor, and requested that the petition might be granted. On the 18th of said June, the judge of probate decreed " that the said Fitzhenry be removed from his office of executor as aforesaid ; ' averring, as a reason for the decree, that upon examination of the circumstances set forth in said Fitzhenry's petition, it appeared that he had become unsuitable to discharge said trust.

The said Benjamin P. Homer, at the time of making his said will, and at the time of his death, was seized and possessed of the premises described in the deed declared on, and they were not specifically devised by said will.

On these facts, it was agreed by the parties, that if the court should be of opinion that the defendants had authority, in their capacity of executors, to convey the said premises, the plaintiff should become nonsuit ; otherwise, that the defendants should be defaulted.

*Blake,* for the plaintiff. The defendants had not lawful authority, and were not duly empowered, by the will of Benjamin P. Homer, to convey the premises to the plaintiff. In *Shelton* v. *Homer,* 5 Met. 462, it was decided that the power to sell real estate, under this will, vested in the two present defendants, and could not be executed by one of them alone. But no decision was made as to the legal character of Fitzhenry

Homer's resignation of his office of executor; for that case did not call on the court for a decision on that subject.

The power of allowing executors and administrators to resign was first *expressly* given to judges of probate by *St.* 1843, *c.* 97. In the marginal note to the case of *Sears* v. *Dillingham*, 12 Mass. 358, it is stated that an executor, after probate of the will, accepting the trust, and giving bond, cannot renounce the trust; and the point was so decided, upon a motion, made before trial, for leave to resign. But whether this decision was made by the whole court upon argument, or by a single judge on the eve of a jury trial, does not appear from the report. In 1 Williams on Executors, (1st ed.) 148, (2d ed.) 162, it is said, "there are some old cases, in which it is laid down, that if an executor has once administered, not only is he compellable to undertake the office, if the ordinary desire it, but that the ordinary has no jurisdiction to accept his refusal and grant administration *cum testamento annexo* to another. But these cases appear to have been decided while a great jealousy of the ecclesiastical courts prevailed; and the law, it should seem, is now taken to be, that the ordinary may (though perhaps he ought not) accept the executor's refusal, notwithstanding he has administered." By the Rev. Sts. *c.* 63, § 7, "when any executor shall become insane, or otherwise incapable of discharging his trust, or evidently unsuitable therefor, the judge of probate may remove him, and the other executor, if there is any, may proceed in discharging the trust, as if the executor, so removed, were dead." A discretionary power is thus given to judges of probate. And this power was fitly exercised in the removal of F. Homer on his petition. The judge of probate, in effect, adjudged that, for the reason set forth in said petition, the petitioner had become evidently unsuitable for the further discharge of his trust.

If any question could be raised as to the legality of this decree of removal, all who are parties or privies to the decree are estopped to deny its sufficiency. As to them, there was an express declaration of a sufficient cause for said decree,

and a waiver of all objections to the proceedings. It is *res judicata*, and has been acquiesced in by all the parties in interest. Shelton and Dixon not only acknowledged that they had received notice of Homer's petition, but they requested that it might be granted. See *Cowdin* v. *Perry*, 11 Pick. 511. *Rice* v. *Smith*, 14 Mass. 431. *Loring* v. *Steineman*, 1 Met. 204. *Carlisle* v. *Weston*, 21 Pick. 537.

The removal of one of the executors being valid, he was divested of the power of sale, under the will, and the covenant that the defendants had such power is broken.

*Dexter & C. G. Loring*, for the defendants. It is not contended by the defendants that Homer could execute the power, if he had been effectually discharged as executor. The power was given, by the will, to those who should undertake the office of executor, and with a view, therefore, to the security of their bond. When the security ceases, it is not contended that the power remains. But it is denied that Homer was ever effectually discharged. This depends on the construction of Rev. Sts. *c.* 63, § 7, which authorize the removal of an executor who is "evidently unsuitable" for the trust. These words are to be construed, in connexion with the terms "insane, or otherwise incapable," as denoting an obvious unfitness, arising from some relation to the estate or parties in interest, or some personal interest of his own, which might not have been foreseen by the testator, or may have arisen after his death, and which renders the executor an improper person to be intrusted with the execution of the will. The word "evidently" is very emphatic, and shows an intention of the legislature that no constructive unsuitableness, founded in convenience or choice merely, or in any equivocal cause, should be sufficient; but that it must be a clear case of absolute unfitness, equivalent to insanity or incapability. To the position of the plaintiff, that Homer was lawfully discharged, because "evidently unsuitable," the answer therefore is, that he was in no degree disqualified by the claim which he made, and which was resisted by his co-executor, unless every dispute between co-executors is a

good cause of removal. The matters in controversy could have been settled by the judge of probate, and by this court, on appeal, without discharging either executor. Homer claimed possession of his portion, without being obliged to account, or give security. The other executor insisted that he and Homer held that share as trustees for Homer and the testator's grandchildren. See *Homer* v. *Shelton,* 2 Met. 194. Surely, if one of two executors and residuary legatees gets possession of the whole estate, and refuses to pass over the other's share, the judge of probate may order him to pass it over, and he might be compelled so to do by suit on his bond ; co-executors' bonds being joint and several. The construction of a will is, in the first instance, a matter for the judge of probate, when the proceedings before him raise the question. The discharge of Homer, therefore, was not neces- sary to the settlement of the question raised by him. He received his discharge on his own motion, and merely for con- venience of parties as to the form of proceeding. The judge of probate has no power to consult the personal convenience of executors, by discharging them from their duties.

The construction of the Rev. Sts. *c.* 63, § 7, for which the defendants contend, is made obvious by the subsequent *St.* of 1843, *c.* 97, which enlarges the power of judges of probate, and gives them authority to allow the resignation of an exec- utor or administrator, when it shall appear to them *proper* to allow the same. Certainly this would have been unneces- sary, if those judges previously had the power of permitting resignations merely because of the personal convenience or pleasure of an executor, when he was in no wise incapaci- tated to perform the duties of his trust.

The plaintiff's position, that the decree of the judge of probate is conclusive of the unsuitableness of Homer, and that the defendants are estopped to deny its validity — they being virtually parties to it — is obviously untenable. If, indeed, the judge had taken upon himself to adjudge Homer to be "unsuitable," without stating any reasons, and of his own motion, it might be said that it was the exercise of a

discretionary power, and, if not appealed from, could not afterwards be questioned. But the record shows that it was upon Homer's application, and that the cause of removal was his desire to commence an unnecessary suit against his co-executor. The decree itself shows that the judge was acting beyond his authority. The defendants do not seek to go behind the decree, but only to look into it and show its invalidity.

The cases cited by the plaintiff sustain the views of the defendants, rather than those of the plaintiff. That of *Cowdin* v. *Perry* is to the point, that a decree of a court of probate is conclusive only where the court has jurisdiction. And if it appear on the record, as it does in the present case, that there existed no such unsuitableness as the law requires, then the case was not within the jurisdiction of that court, and the decree is a nullity. Upon the authority of *Carlisle* v. *Weston*, it is evident that, whenever the want of jurisdiction appears upon the record, nothing which the parties can do, or omit, can cure the defect. A further answer is, that no submission of the parties, or admission of the jurisdiction, can bind them, or avail them in any subsequent proceedings. They act *en autre droit.* They cannot, as trustees, disqualify or estop themselves.

HUBBARD, J. It was expressly admitted, in the argument for the defendants, that Homer could not execute the power if he had been effectually discharged as executor ; that the power was given by the will to those who should undertake that office, and with a view, therefore, to the security of their bond ; and that, when that security ceases, the power does not remain. The only question, therefore, presented for the consideration of the court, is upon the validity of the decree removing Mr. Homer from his office as executor. This depends upon the construction to be given to the Rev. Sts. *c.* 63, § 7, the words of which are, "or where any executor shall become insane, or otherwise incapable of discharging his trust, or *evidently unsuitable therefor,* the judge of probate may remove him, and the other executor, if there is any

may proceed in discharging the trust, as if the executor so removed were dead."

It is argued, from the words " evidently unsuitable," that no constructive unsuitableness, founded on convenience or choice merely, or any equivocal cause, is sufficient, but that it must be a clear case of absolute unfitness, equivalent to insanity or incapability. The defendants also contend, that the decree of the judge of probate was not warranted, upon the case presented to him, as the matter in controversy between Homer and the other heirs could have been settled by the judge of probate, upon appeal to this court, without his discharge.

These grounds of objection are in their nature distinct; but the last is dependent upon the first. Because, if the removal was for a cause over which the judge had jurisdiction, the correctness of his judgment cannot be impugned in this collateral manner.

We think too limited a construction is given, by the learned counsel, to the word " unsuitable," by restricting it to a cause of unfitness equivalent to insanity or incapability. The causes for removal are both physical and moral. Insanity is a cause for removal arising from bodily disease, and the incapability of discharging the trust is similar, when arising from defect of memory, want of physical ability, or other like infirmity. But unsuitableness implies no want of capacity or mental infirmity, but an unfitness arising out of the situation of the person in connexion with the estate of which he is administrator, either by reason of his being indebted to it, or having claims upon it, or in the interest he has under a will, or his situation as an heir at law. The statute does not attempt to enumerate the causes, but gives the judge of probate a broad discretion to include the various cases that may arise, where the exercise of such a power would be judicious, and which power may be well reposed in him, in the first instance, as his decree, if complained of, may be immediately reversed on appeal.

This view is taken of the statute, in the case of *Winship*

v. *Bass*, 12 Mass. 200, 201, where a question arose on an appeal from the judge of probate for removing an executor on the ground that he was an unsuitable person to execute the trust, by reason of his being indebted to the estate. The removal in that case was under *St.* 1783, *c.* 24, § 19, the provisions of which are reënacted, together with those of *St.* 1808, *c.* 98, § 1, on the same subject, in the Rev. Sts. *c.* 63, § 7.

In the case at bar, the executor himself, for causes named, having claims on the estate which he believed he could not properly prosecute while he held the office of executor, prayed to be discharged from the trust; and the judge, in the exercise of his judicial functions, made the decree which is now complained of.

It is contended that this decree was a nullity. But the judge was called upon to decide a case, to wit, the unsuitableness of one of the persons named as executor to execute the trust reposed in him. He had then the proper parties before him, and the subject was expressly embraced in a statute in which the jurisdiction, in the first instance, is conferred solely on him. Instead, therefore, of treating this decree as a nullity, we are bound to declare in favor of its validity, whether we are satisfied with the reasons which influenced his judgment, or not; the decree not being void for want of jurisdiction, and not having been appealed from by the parties interested.

As to the other consideration, that such a removal was unnecessary, and that the whole matter might as well have been settled without his removal, either in the probate or in the appellate court, we are of opinion that the arguments used might properly have been urged on an appeal to this court, but that they cannot be considered when the object is to set aside a judgment of a court of competent jurisdiction in a collateral suit; the conclusiveness of the judgments of probate courts, on subjects within their jurisdiction, being as firmly established as of any other courts. *Loring* v. *Steinman*, 1 Met. 208.

The petition to the judge of probate, in this case, may not have contained all the facts which led the petitioner to make the request upon which the judge founded his decree ; although the facts therein stated laid the foundation for the application.   And this we may well suppose from the case of *Shelton* v. *Homer*, 5 Met. 462, which was referred to in the argument, and in which it appears that, in only two days after the removal of Homer from his office as executor, a contract was made by him with the remaining executor, for the purchase of this same estate, which contract this court refused to enforce ; and it might lead to the supposition that the present suit is an attempt to accomplish that indirectly which could not be done by the parties themselves.  As to this, however, we of course express no opinion.

Upon the point now presented to us, we are of opinion that the decree of the judge of probate removing Homer from the office of executor was a valid decree, and is now of binding force.   According, therefore, to the agreement of the parties, the defendants must be defaulted.