SAXE and others, Appellants, vs. SAXE and another, Respondents.

*October 22—November 17, 1903.*

*Executors: Objections to person named: Mandatory statute.*

Sec. 3792, Stats. 1898, providing that "when a will shall have been duly proved and allowed, the county court shall issue letters testamentary thereon to the person named executor

therein, if he is legally competent," etc., is mandatory; and objections going merely to the temper, disposition, habits, and moral character of the person named, rendering him obnoxious to parties interested in the estate, will not justify the court in disregarding the expressed wish of the testator. *Estate of Pike*, 45 Wis. 391, distinguished.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES O'NEILL, Judge. *Affirmed.*

Louis Saxe executed his last will and testament January 6, 1894. He died September 9, 1900. On September 12, 1900, *Leo E. Saxe* and Thomas J. Pereles, named as executors in the will, petitioned the county court for the probate of the will and for letters testamentary to be granted thereon according to law. On November 5, 1900, the widow and ten of the children of the deceased (being all except one and *Leo E. Saxe*) appeared and objected in writing to the appointment of *Leo E. Saxe* as such executor for the reasons that he was incompetent and irresponsible; that he would be obnoxious, and would not act for the benefit and interest of the persons interested in the estate; and that he was not of such a character in whom confidence and trust could be imposed. Afterwards, on November 13, 1900, the will was admitted to probate. On May 28, 1901, the county court entered an order overruling and setting aside such objections and appointed *Leo E. Saxe* as one of such executors, and thereupon, on the same day, *Leo E. Saxe* accepted such trust and qualified as such executor and duly filed the bond required of him by law and the order of the county court, and letters testamentary were thereupon issued to him.

Thereupon an appeal was taken from such order and judgment of the county court so appointing *Leo E. Saxe* as such executor to the circuit court, wherein, after due notice, the cause was retried, and at the close of the trial that court found, in addition to the facts stated, in effect, that at the time of the probate of the will and issuing of letters testa-

mentary thereon to *Leo E. Saxe* he was legally competent to act as such executor; that some years before *Leo E. Saxe* gambled at times, but the nature of such gambling was not disclosed by the evidence, and it was not proved that he was ever an habitual or professional gambler; that the evidence tended to throw suspicion upon the good faith of some of the business transactions of *Leo E. Saxe* in previous years, but was not sufficient to prove actual fraud and dishonesty on his part; that the evidence failed to sustain the objections filed to his appointment as such executor, except in the particular that he was obnoxious to the heirs who filed such objections. And as conclusions of law the court found, in effect, that *Leo E. Saxe,* at the time of the death of the testator and the probate of the will, was, and still is at the present time, legally competent to act as such executor of said last will and testament, and was entitled to the issuance of letters testamentary to him as such executor; that *Leo E. Saxe* was entitled to judgment affirming the order of the county court in said matter, and therein directed the case to be remitted to the county court for further proceedings as provided by law; that *Leo E. Saxe* was and is entitled to recover his costs and disbursements on such appeal from the appellants, and ordered judgment to be entered accordingly. From the judgment so entered the plaintiffs appeal.

For the appellants there was a brief by *Nath. Pereles & Sons,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *F. H. Remington* and *G. D. Goff.*

For the respondent *Leo E. Saxe* there was a brief by *Fiching & Killilea* and *Howard Van Wyck,* and oral argument by *Mr. Van Wyck.*

CASSODAY, C. J. By stipulation of the parties the case was retried in the circuit court upon the evidence taken in the county court. Such testimony was voluminous. The view

we have taken of the case, however, renders it unnecessary to discuss the evidence in detail. The statute declares:

"When a will shall have been duly proved and allowed the county court *shall* issue letters testamentary thereon to the person named executor therein, *if he is legally competent* and shall accept the trust and give bond as required by law." Sec. 3792, Stats. 1898.

Upon the will being admitted to probate, and *Leo E. Saxe*, named as executor therein, having been appointed as such, he immediately accepted the trust and gave bond as required by law and the order of the county court. This being so, the important question is as to the effect to be given to the language of the section which declares that "the county court *shall* issue letters testamentary . . . to the person named executor therein, *if he is legally competent*." Both the county court and the circuit court found as a matter of fact and as a conclusion of law that *Leo E. Saxe* was legally competent to act as such executor. The findings of the court are amply supported by the evidence. There is no claim that he was wanting in mental capacity to perform the duties of executor. The objection that he was irresponsible seems to be answered by his promptly giving the requisite bond. The other objections are to the effect that he abused his stepmother, was obnoxious to the objecting heirs, and that his character was not such as to inspire confidence and trust. The objections go to his temper, his disposition, his habits, and his moral character, rather than to his capacity to do business. Are such objections available to set aside the expressed wish of the testator? A recent work declares that:

"An executor, according to the common-law doctrine, derives his office solely from the will by which he is appointed, and not from the probate, which is held to be only evidence of his right. In many, if not all, of the states of the Union the authority of an executor, while derived primarily from the will, is not derived solely therefrom, and is not complete until the executor has qualified by complying with certain

statutory requirements, and has received letters testamentary from a court of competent jurisdiction; but the *nomination* contained in the will *cannot be disregarded by the court* unless the person named is for some reason disqualified to act as executor, and the authority of the court in the premises is limited to qualifying the executor and issuing letters testamentary, and does not extend to the appointment, as that authority pertains to the testator alone." 11 Am. & Eng. Ency. of Law (2d ed.) 744, 745, cited approvingly in *Somervaill's Will,* 104 Wis. 72, 74, 80 N. W. 65.

To the same effect, Schouler, Ex. & Adm. (2d ed.) § 33. Such rule is amply supported by authority. Thus it was long ago held in Kentucky that:

"Moral fitness of person appointed executor by will cannot be inquired into by the court to which he applies for permission to qualify. Executor derives his office from testamentary appointment, and, if he is a person not disqualified by law from being an executor, the court has no right to refuse to permit him to qualify, or to refuse to grant him letters testamentary." *Berry v. Hamilton,* 12 B. Mon. 191, 54 Am. Dec. 515; *Holbrook v. Head,* 9 Ky. Law Rep. 755, 6 S. W. 592; *Worthington v. Worthington's Ex'r,* 18 Ky. Law Rep. 62, 35 S. W. 113.

So it has been held in Connecticut that:

"The rule of the common law as to who might be executors was that all persons might be who were mentally capable of executing the trust, or were not specially disqualified. Where a testator appoints an executor out of the class recognized by the common law or by statute as capable, the probate court cannot reject the person so appointed, except in cases where the law has specially so provided." *Smith's Appeal,* 61 Conn. 420, 24 Atl. 273.

In New York it has been held that, "to render one incompetent to serve as executor, . . . it is not sufficient to show that he has an ill-regulated temper, lacks self-control, and is accustomed to use abusive language toward those named as coexecutors." *McGregor v. McGregor,* 3 Abb. Dec. 92; *Emerson v. Bowers,* 14 N. Y. 449. So it was held in Pennsylvania

many years ago that "a person found by inquisition to be an habitual drunkard is not thereby deprived of his power to perform the office of executor or administrator." *Sill v. M'Knight,* 7 Watts & S. 244. See *Holladay v. Holladay,* 16 Oreg. 147, 19 Pac. 81. The direction of the testator in naming his executor is not to be disregarded except as prescribed by statute. This court has recently reversed a case for failure to follow the direction of the testator in the appointment of a person to fill a vacancy as trustee. *Cole v. Watertown, ante,* p. 133, 96 N. W. 538.

Counsel for the appellants cite *Estate of Pike,* 45 Wis. 391. That was a proceeding to remove an executor under a statute now embraced in sec. 3803, Stats. 1898. Such statute expressly authorized the county court to remove an executor who should "neglect, after due notice given by the county court, to render his account and settle the estate according to law, or to perform any judgment of the court," or who should "abscond, or become insane, or otherwise incapable or unsuitable to discharge the trust" imposed upon him. It will be observed that the several things which may thus authorize removal are all such as occur after he is appointed. It is enough to say that the case at bar does not come within the provisions of that section.

We must hold that *Leo E. Saxe* was legally competent to act as such executor within the meaning of sec. 3792, Stats. 1898, and hence that that statute was mandatory and required the county court to give effect to the expressed wish of the testator by appointing him as such executor.

*By the Court.*—The judgment of the circuit court is affirmed.