Will of Zartner: Holzhauer (former executor), Appellant, vs. Zartner and another, Respondents.

*March 14—April 8, 1924.*

*Executors: Appointment and removal: Control by court: Misconduct occurring before appointment: Decision on appointment as res adjudicata: Adverse interest to estate as ground of removal.*

1. A statute specifying the grounds of removal of executors, administrators, guardians, and trustees is usually held to preclude a removal on grounds not specified.    p. 509.
2. The duties of an executor are continuing, and their exercise is always subject to the supervision of the court; and the tendency of the courts to regard the nomination of an executor by the testator as mandatory may be due in part to the fact that he may be removed under the statute:    p. 512.
3. The qualifications of the person nominated must be determined as of the time when the appointment was made, and the question whether he is unsuitable is to be determined when the question of removal arises and under a different statute from that under which the appointment is made.    p. 513.
4. Where the alleged misconduct of appellant was in misrepresenting to testatrix offers he had received for property intrusted to him for sale and which he later purchased indirectly, the court was not foreclosed from ordering his removal as executor either because of the fact that the misconduct complained of occurred before his appointment or because the appointment was *res adjudicata* as to the objections made the basis of the removal.    p. 513.
5. Where an executor was personally adversely interested in an estate and in an action required to be brought against him to protect rights of the estate, an order for his dismissal will not be reversed.    p. 515.

Appeal from an order of the county court of Milwaukee county: M. S. Sheridan, Judge. *Affirmed.*

This is a proceeding for the removal of an executor on the grounds of misconduct on his part while acting as agent of the decedent, on account of which there arose serious conflicts of interests between the executor and the estate.

Other facts will be stated in the opinion.

For the appellant there was a brief by *J. F. La Boule* and

*John O'Meara,* attorneys, and *McGovern, Hannan, Devos & Reiss,* of counsel, all of Milwaukee, and oral argument by *Francis E. McGovern.*

For the respondents there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Walter D. Corrigan, Jr.,* of counsel, and oral argument by *Walter D. Corrigan.*

JONES, J.  The following is a summary of the findings of the trial court: The court found that about February 1, 1922, the appellant was employed by Emma Zartner to act as her agent to sell certain premises and buildings in Milwaukee; that thereafter he interviewed one person with respect to such sale and received an offer of $75,000, which proposition he rejected, and thereafter was offered $80,000, which offer he rejected; that thereafter an offer of $85,000 was made and rejected, all of which took place prior to February 16, 1922; that before that date the appellant went to the testatrix and advised her that he had received an offer of $75,000, and she took the same under advisement, and prior to the date last named she advised appellant that she would accept $75,000 net; that appellant had asked the testatrix if it made any difference to whom she sold the property at that price, and she said that it did not; that appellant at no time told decedent that he had received any offer of more than $75,000 and she had no knowledge of other offers; that the prospective purchaser was able, ready, and willing to pay the purchase price offered; that appellant proceeded to have the decedent execute and deliver a deed to William Daehn for a consideration of $75,000, $20,000 of which was paid to her in cash by appellant out of his own money; that appellant then caused Daehn to execute and deliver a mortgage on the property securing the balance of the purchase price, $55,000; that appellant caused Daehn to execute and deliver a deed of the property subject to the mortgage to Albert Dorrler, who paid no consideration; that the appellant paid Daehn $50 for his part in the transaction; that

when Daehn took record title to the property the appellant
caused him to execute and deliver to the appellant a deed of
an undivided one-half interest in the property, but kept the
same from record and destroyed it after he had caused the
deed to be executed and delivered to Dorrler; that when
Dorrler had taken title appellant caused him to convey the
property to himself, the appellant, but did not record the deed
until May, 1923; that appellant caused the sum of $95 in
revenue stamps to be placed on the deed from Mrs. Zartner
to Daehn, intending to indicate that the consideration was
$20,000 more than it actually was; that Daehn never had
any interest in the property, but took the deed wholly in the
interest of appellant and with that understanding; that Mrs.
Zartner had great confidence in the appellant as her agent
and never discovered that he had been offered more than
$75,000 net to her; that there was a fiduciary relation be-
tween them; that appellant made no effort to receive a better
price for the property, did not advertise the same, nor place
it before any prospective purchaser other than the one re-
ferred to; that when appellant refused to sell the property to
the prospective purchaser he told him that the same had been
sold to someone else for a better price; that appellant acted
in bad faith and fraud under his agency, and fraudulently in-
duced Mrs. Zartner to convey the property in such manner
that he could gain title for himself when he might reasonably
have received a much better price, and at least $85,000; that
at the time of the transaction the property was reasonably
worth $100,000 or more; that appellant is adversely inter-
ested in the estate, and that an action should be brought
against him by an administrator with the will annexed to
protect the rights of the estate, and that he was unsuitable
to discharge the trust as executor.

As conclusions of law it was found that appellant is un-
suitable to discharge the trust and should be removed as
executor; that Neele B. Neelen should be appointed in his
place and required to give bond in the sum of $85,000.

Mrs. Zartner was a widow sixty-six years old, and there was evidence that she had consulted fortune tellers as to the advisability of selling the property. She was never advised of the facts relied on by respondents as constituting the misconduct of her agent, and the proof showed that she was satisfied with the transaction. The most important testimony relied on by respondents was that of the person who made the offer of purchase. This testimony was contradicted by appellant and in some respects by several witnesses.

Defendant produced the greater number of witnesses, but quite important facts embodied in the findings were undisputed. These facts were doubtless considered by the trial court as sufficient to turn the scale in favor of respondents.

The trial court saw the witnesses and heard the testimony, and we cannot say that his findings were not sustained by the evidence. Since there may be further litigation between the parties, we do not think it best to comment in detail upon the evidence.

The proceeding is based on sec. 3803, Stats., which gives to the county court the power to remove executors, administrators, guardians, and trustees. The following is the portion of the section which is relied on: "or shall . . . become insane or otherwise incapable or unsuitable to discharge the trust, the county court may remove such executor."

As argued by appellant, a statute specifying the grounds of removal is usually held to preclude a removal upon grounds not specified. On this premise there is based the argument that, since the statute does not provide for removal for conduct prior to the appointment by the testator, there could be no valid removal in this case, since the misconduct all occurred before the execution of the will. To sustain this proposition counsel cite *Saxe v. Saxe,* 119 Wis. 557, 97 N. W. 187. This was a case where the heirs of deceased opposed the appointment of the person named as executor, urging as objections temper, disposition, habits,

and character which rendered him obnoxious to parties interested in the estate, under the statute which provided that "the county court *shall issue* . . . to the person named executor therein if he *is legally competent.*"

The court held that the objections went to other matters than his capacity to do business; that the statute was mandatory; and that the objections were not available under the statute to set aside the express wish of the testator. It is true the court, in commenting on the case of *Estate of Pike,* 45 Wis. 391, said: "It will be observed that the several things which may thus authorize removal are all such as occur after he is appointed. It is enough to say that the case at bar does not come within the provisions of that section."

In the *Saxe Case* there was no question of removal before the court. Another statute than that relating to removals was being construed, and we do not consider that the language last quoted should be given the effect claimed by counsel.

*Estate of Pike, supra,* was an action brought under the statute for the removal of an executor. Among other things, it was found by the trial court that "at the time of the filing of the petition there was, and still continues to be, an acrimonious and hostile feeling between the appellant and the respondent, which intercepts and prevents such a management and husbanding of the estate of Oliver Pike, deceased, as prudence, sound policy, and the interests of the devisees and creditors require." It was held that this finding alone, if established by the proofs, would make a case for the exercise of the discretion of the court. "Such a condition of affairs, whether chargeable to the executor or not, would inevitably render the execution of the trust perplexed or difficult, and would be likely to interfere with the proper management and disposition of the estate." *Estate of Pike,* 45 Wis. 391, 396.

It was further held that our statute was substantially like that of Massachusetts and had there received judicial con-

Will of Zartner, 183 Wis. 506.

struction long before it was enacted here and consequently should be given the same construction in this state. In that case it was argued, as here, by counsel for the executor that it must be shown that there had undergone some change of character affecting his fitness for the trust.

It was the rule early adopted in Massachusetts that if it happened that an executor or administrator is unsuitable he may be removed, and that he is deemed unsuitable when he has conflicting personal interest which prevents him from doing his official duty. *Winship v. Bass,* 12 Mass. 198; *Thayer v. Homer,* 52 Mass. 104.

This conflict of interests in some cases may not be serious. It may have been known to the testator at the time of the execution of the will and may not have been regarded by him as an obstacle to the choice made. When the letters testamentary are issued the court may be of the opinion that the conflict is not so important as to affect the action of the executor or interfere with the proper administration of the estate.

The attitude of the person named as executor may be such that there is reason to expect that an amicable adjustment may be made. Such circumstances as these may properly lead the court to appoint the person nominated in the will, although it is apparent that some conflict of interest exists or may arise.

In the instant case the objection now made was raised before the appointment of the defendant. It appears that some testimony was taken on the subject, but that testimony is not before us. There may have been many facts disclosed in the case at bar which were not presented on the hearing of the other issue. At that hearing the trial court, under sec. 3792, Stats., found that the defendant was "legally competent to qualify." On the other question the court decided as follows:

"The question raised by the objectors as to *Mr. Holzhauer* being unfit and an improper party to qualify as executor is based upon contemplated litigation which certain heirs

feel should be instituted against the executor named in the will, but the court has no right to anticipate adverse interest of the appointee. If such adverse interest later is proven, there is ample remedy in removal of the executor as provided by our statutes."

In the oral argument it was contended by counsel for appellant, although the point is not urged in the brief, that this decision was *res adjudicata.* This contention is closely allied with the other argument that the court cannot remove an executor for acts or conduct prior to his appointment. In considering this subject it must be borne in mind that the power of appointment and the power of removal are conferred by two entirely different statutes. The common law as to the qualification of executors is thus stated in 11 Ruling Case Law, 43:

"At common law all persons might be appointed as executors who were mentally capable of executing the duties of the trust, or, as it is otherwise stated, who were capable of making a will, or were not specially disqualified. This signified that all persons except idiots and lunatics were competent to act as executors; and that neither infancy, non-residence, coverture, intemperance, improvidence, ignorance, vice, dishonesty, nor any degree of moral guilt or delinquency, disqualified one for the office."

Although this rule has been quite generally modified by statutes in this country, the testamentary nomination will not be disregarded by the courts unless the person named in the will is disqualified by the statute. *Saxe v. Saxe,* 119 Wis. 557, 97 N. W. 187. The extent to which the courts seek to carry out the wish of testators in the appointment of executors is illustrated by cases cited and quoted in 23 Corp. Jur. 1024 *et seq.* Except for very cogent reasons the courts follow the maxim "Whom the testator will trust so will the law."

The tendency of the courts to regard the nomination by the testator as so largely mandatory may be due in part to the fact that statutes give the power of removal. The

duties of an executor are continuing duties, and their exercise is always subject to the supervision of the court.

The qualifications of the person nominated must be determined as of the time when the appointment is made. The question whether he is unsuitable is to be determined when the question of removal arises and under a different statute from that under which the appointment is made. We think that under the circumstances the court was not, as a matter of law, foreclosed from ordering the removal either by the fact that the misconduct complained of occurred before the appointment or by the rule of *res adjudicata.*

The reasons for this view were very well stated by a very able Massachusetts judge. After holding that there must be an existing unsuitableness when the petition for removal was heard, it is said:

"But if since his appointment he has not become a suitable administrator he has become an unsuitable one, and may be removed for that cause upon petition, although the present unfitness may have existed before his appointment to an equal degree and would have been a good cause for refusing to appoint him in the first instance.

"Thus, for example, a person who applies for administration may have interests conflicting with those of the estate. The probability that these would prove an embarrassment in the proper performance of his duty might be a sufficient reason for a refusal of the judge of probate to intrust him with the administration. But he is appointed. Either the fact was not brought to the notice of the judge, or he did not think it a sufficient objection. The administrator enters upon the discharge of his trust. It may be that his claims adverse to the estate are amicably adjusted; or he may show by his conduct that he is ready to make his own rights subordinate to those whose interests he represents. It would not then be just or lawful to deprive him of his vested interest in the administration, by merely showing the condition of things before his appointment, and thus in effect rejudging the correctness of the decision which had been made. But suppose, on the other hand, that his claims remain unsettled and without reasonable prospect of a fair

settlement; or that by act or speech he shows that he intends to secure an unfair advantage to himself; then, within the meaning of the statute, he may be held to have "become evidently unsuitable for the discharge of his trust;" and we think it would be no sufficient answer to an application for his removal that he was just as unsuitable when he was appointed." *Drake v. Green,* 92 Mass. 124, 125.

It is argued by counsel for respondents that under the existing facts it would be necessary for the executor to bring an action against himself in order to protect the interests of the estate; that the executor is a *quasi*-trustee whose duty it is to serve the estate, and that he should be indifferent between the estate and claimants except to preserve the estate for due administration.

Of course it would be an intolerable situation if the executor alone could maintain such an action against himself as might be necessary under the facts of this case either for damages or to set aside the conveyance or for rescission. Counsel for appellant concede in their brief that the next of kin cannot, in the absence of special circumstances, maintain actions in their own names to recover the unadministered personal estate of the decedent or collect debts or other choses in action due him, and that such actions can only be maintained by the representative of the estate. But they urge that there is an exception to this rule and cite *Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473, and other cases. These are cases in which the executor or administrator had colluded with another to defraud the estate and had refused to bring suit against the other party. In such actions it has been held that the distributees may protect their equitable interests by bringing suit in their own names. Such a situation is clearly not the same as that here presented.

It is also urged by appellant's counsel that only the heirs could maintain an action to set aside the conveyance, and to this proposition they cite *Ecklor v. Wolcott,* 115 Wis. 19, 90 N. W. 1081, an action brought under sec. 3832, Stats. For reasons later stated we do not find it necessary to decide

whether the distributees under the will could maintain an action, on proper proofs, either for damages for deceit or to set aside the conveyance. In addition to the cases cited in the briefs the following are some of those which have a bearing on this question of the survival of actions: *Borchert v. Borchert,* 132 Wis. 593, 113 N. W. 35; *Somervaill v. McDermott,* 116 Wis. 504, 93 N. W. 553; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536; *Lane v. Frawley,* 102 Wis. 373, 78 N. W. 593. These were cases decided before the important amendment to sec. 4253, Stats. This amendment was ch. 353, Laws 1907.

The following are decisions since the amendment was adopted: *Payne v. Meisser,* 176 Wis. 432, 187 N. W. 194; *Woodard v. Citizens S. & T. Co.* 167 Wis. 435, 167 N. W. 1054; *Puffer v. Welch,* 144 Wis. 506, 129 N. W. 525.

Even if the distributees could maintain an action against the executor it does not follow that the executor should be retained in office. His plain duty would be to conserve the estate. His personal interest would demand that the claim of the estate against himself be defeated. Under such conditions he could not faithfully serve two masters. There would undoubtedly exist such a conflict of interest and such hostility as would interfere with the proper administration of the estate. To a considerable extent the questions involved rested in the discretion of the trial court, and we do not feel justified in reversing his decision.

*By the Court.*—Order affirmed.