ESTATE OF KESKE: KESKE, Appellant, v. MARSHALL & ILSLEY BANK, Administrator w. w. a., and others, Respondents.

*October 5—October 30, 1962.*

48

For the appellant there was a brief and oral argument by *Martin J. Torphy* and *Ellis R. Herbon,* both of Milwaukee.

For the respondents there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Thomas J. Drought* and *Robert E. Cook* of counsel, all of Milwaukee, and oral argument by *Mr. Drought.*

FAIRCHILD, J.  The questions are: (1) Did the personal representative of Paul Keske, deceased, have any duty to perform with respect to the circuit court action? (2) Was Elmer properly considered legally incompetent to be the personal representative because of inability to perform such duty?

1. *Duty of personal representative.* Elmer argues that the personal representative of a deceased has no interest in an action for rescission or cancellation of a conveyance of land made by the deceased unless there is a deficiency of assets to pay creditors of the estate, expenses of administration, or (under some circumstances) legacies. This court has held that unless there be such deficiency the administrator is not entitled to institute an action to set aside a conveyance of real estate made by a decedent as a result of fraud practiced upon him. Because real estate descends to the heirs or devolves upon devisees immediately upon the death of the ancestor or testator, the right of action descends to them and they have the right to prosecute and control the action.[1]

This court does not appear to have considered a situation like the one now before us where an action for cancellation had been instituted before the death and recovery also sought for the use of the premises. Neither has it considered a situation where the heirs or devisees have instituted an action to set aside a conveyance and the personal representa-

[1] *Neelen v. Holzhauer* (1927), 193 Wis. 196, 201, 214 N. W. 497; *Glojek v. Glojek* (1948), 254 Wis. 109, 35 N. W. (2d) 203. See, however, *Zartner v. Holzhauer* (1931), 204 Wis. 18, 234 N. W. 508.

tive desires to be a party to the action in order to recover the value of the use of the property before the death. In *Neelen v. Holzhauer, supra,* the parties argued whether or not the existence of a cause of action for rents and profits between the time of conveyance and the death would justify the commencement of an action by the administrator alone to cancel the conveyance,[2] but the opinion contains no discussion of the point.

In the instant case the action for cancellation and recovery of an allowance for use was commenced before the death. An equitable action to set aside the conveyance of real estate survives.[3] An allowance for the use of the land would appear to be a proper incident of the action. The relief obtainable includes "a complete adjustment of the respective equities of those concerned." [4] Such allowance for the use of the land up to the time of the death would be an asset of the estate.[5]

If a cause of action survives the death of plaintiff, the court may order the action to be continued by his representatives or successors in interest.[6]

If undue influence or incompetency be established, and the deed canceled, the personal representative of Paul Keske, deceased, will have an interest in the recovery of the value of the use of the property prior to the death. We conclude that the personal representative was therefore a proper party to participate with the heirs in the revival and prosecution of the pending circuit court action in order to establish such value.

---

[2] 1614 Cases and Briefs, *Neelen v. Holzhauer,* respondent's supplemental brief, p. 5, and appellant's reply brief, p. 2.

[3] Sec. 331.01, Stats.

[4] See 9 Am. Jur., Cancellation of Instruments, pp. 402, 403, secs. 65, 66.

[5] The personal representative, not the heirs, is entitled to sue for rents accruing before the death of a landlord. 21 Am. Jur., Executors and Administrators, p. 885, sec. 915; p. 944, sec. 1011.

[6] Sec. 269.16, Stats.

Whether the personal representative should participate or not would depend upon an evaluation of the merits of the action, the value which might be recovered, and the expense involved. When the matter of appointment of a personal representative was before the county court, only a few days remained in which to act to revive the circuit court action. The duty would immediately devolve upon the personal representative to make an independent objective judgment on what must be done to protect the interests of the estate. Unless the allegations in the complaint in the circuit court action were completely sham, personal interest would prevent Elmer from performing such duty.

We note that certain assets of testator, cash and a note, had been deposited with the clerk of circuit court to abide the outcome of the action. If Elmer prevails in the action, these assets will be available to the personal representative, or to the distributees if the estate shall have been closed and these assets assigned. With respect to these assets, his position as defendant would be consistent with the interests of the personal representative. The parties have not suggested that the situation as to these assets gives rise to any conflict, and we see none.

2. *Legal competency.* "When a will shall have been admitted to probate the court shall issue letters testamentary thereon to the person named executor therein, if he is legally competent, accepts the trust, and gives bond when and as required by law."[7] Elmer Keske's fitness was not challenged except for his personal interest in the action to set aside the conveyance.

A conflicting personal interest preventing an executor or administrator from doing his duty renders him unsuitable, and he may be removed.[8]

The question presented here is whether such conflict, if found by the court, is a proper ground for refusing appoint-

[7] Sec. 310.12, Stats.
[8] *Will of Zartner* (1924), 183 Wis. 506, 511, 198 N. W. 363.

ment. Does a serious conflict of interest render a named executor not "legally competent?"

This court has never squarely decided whether a serious conflict of interest, existing at the time of appointment, is a proper ground for finding the nominee not legally competent. In *Will of Zartner* [9] this court affirmed a removal on that ground. Mr. Justice JONES adverted in the opinion to the tendency of the courts to regard the nomination by the testator as largely mandatory. "Except for very cogent reasons the courts follow the maxim, 'Whom the testator will trust so will the law.'" [10]

He also suggested circumstances in which an apparent conflict of interest should not be grounds for refusal of appointment:

"This conflict of interests in some cases may not be serious. It may have been known to the testator at the time of the execution of the will and may not have been regarded by him as an obstacle to the choice made. When the letters testamentary are issued the court may be of the opinion that the conflict is not so important as to affect the action of the executor or interfere with the proper administration of the estate.

"The attitude of the person named as executor may be such that there is reason to expect that an amicable adjustment may be made. Such circumstances as these may properly lead the court to appoint the person nominated in the will, although it is apparent that some conflict of interest exists or may arise." [11]

An excerpt from an opinion in the trial court was set forth, stating that at the time of appointment the court has no right to anticipate adverse interest of the appointee. [12]

In the case before us, the facts giving rise to the conflict of interest did not exist at the time the will was executed,

[9] *Supra,* footnote 8.
[10] *Supra,* footnote 8, p. 512.
[11] *Supra,* footnote 8, p. 511.
[12] *Will of Zartner, supra,* footnote 8, p. 512.

nor until after the testator's alleged incompetence; the trial court could properly consider the conflict as serious; the trial court was not anticipating a conflict which might occur in the future or might be avoided.

This court has not expressly adopted a definition of the phrase "legally competent." In *Saxe v. Saxe* [13] this court decided that a nominee was legally competent as against objections that went "to his temper, his disposition, his habits, and his moral character, rather than to his capacity to do business." It has also been held that residence in Wisconsin is not required; indebtedness to the estate, and refusal under certain circumstances to surrender property of the deceased to the special administrator did not establish lack of legal competency. [14]

The most commonly accepted view elsewhere has been that one who is of sound mind and not subject to any express statutory disqualification is "legally competent" as executor. [15] The supreme court of Nebraska, however, held that a nominee was not legally competent where his duties would require him to prosecute on behalf of adversary litigants a suit which he would defend as an individual. That court said:

"In the sense used by the lawmakers, the term 'legally competent' means fit or qualified to act as officer of the court and as trustee in administering upon the estate of testator according to judicial standards essential to the proper course of justice in the judicial department of government." [16]

[13] (1903), 119 Wis. 557, 560, 97 N. W. 187.

[14] *Estate of Svacina* (1942), 239 Wis. 436, 1 N. W. (2d) 780.

[15] *Clark v. Patterson* (1905), 214 Ill. 533, 73 N. E. 806; *Trustees of House of the Angel Guardian v. Donovan* (1946), 71 R. I. 407, 46 Atl. (2d) 717.

[16] *In re Estate of Blochowitz* (1932), 124 Neb. 110, 112, 245 N. W. 440, 441. See *In re Estate of Haeffele* (1945), 145 Neb. 809, 18 N. W. (2d) 228.

A serious conflict between one's personal interest and an important duty of a personal representative may render adequate performance of that duty impossible. The situation may be one which the testator could not have foreseen. The particular duty may require immediate performance. The difficulty with the traditional definition of "legally competent" is that it appears to exclude this type of situation as a proper basis for refusal to appoint. It leads to the absurdity that the court might be required to appoint an executor which it should immediately remove.

We think that where the county court determines that a nominee's personal interest will prevent him from performing a duty as executor which must be performed immediately, and especially where the conflict is one which the testator did not know or foresee, the county court should refuse appointment. If this cannot be supported by defining legal incompetence to include such conflict of interest, it can be supported on the theory that the conflict of interest is a compelling ground for immediate removal, and it would be a vain act to appoint solely in order to remove.

There must be a measure of discretion in determining whether the particular conflict of interest is serious enough to prevent appointment or compel removal, and we find no abuse of discretion here.

Respondents previously moved to strike portions of the record transmitted to this court on appeal. We continued the motion, for consideration at this time. The portions objected to consist of proceedings had in county court in March and April, 1962, after the order appealed from, and in one instance after this appeal was taken. From them it appears, among other things, that the administrator and heirs sought in circuit court to revive the action; that in March the circuit court granted revival as to the heirs but

denied it as to the administrator; that in the light of the order of the circuit court the county court instructed the administrator not to pursue the circuit court action further.

We now grant the motion to strike. Our determination of whether or not the county court erred in its order of January 31st must be based on the facts before it as of that date. Subsequent proceedings in the circuit or county court are immaterial. Respondents are entitled to motion costs.

*By the Court.*—Order affirmed. Motion to strike portions of the record granted. Respondents may tax $25 costs on motion as well as costs on appeal.