STATE EX REL. FIRST NATIONAL BANK & TRUST COMPANY
OF RACINE, Petitioner-Respondent, v. SKOW, Racine
County Circuit Court Judge, Respondent-Petitioner:
PETRI, and others, Respondents.

Supreme Court

*No. 78-404-W. Submitted on briefs September 12, 1979.—*
*Decided October 9, 1979.*
(Also reported in 284 N.W.2d 74.)

For the respondent-petitioner the cause was submitted on the briefs of *William R. Halsey,* deputy corporation counsel of Racine county.

For the petitioner-respondent the cause was submitted on the brief of *Constantine, Christensen, Krohn & Kerscher, S.C.,* of Racine.

WILLIAM G. CALLOW, J.   This is an appeal from an order of the court of appeals which granted the petition of the First National Bank & Trust Company of Racine (First National) for the issuance of a writ of mandamus to the Honorable Jon B. Skow (Judge Skow). The writ ordered Judge Skow to grant to First National domiciliary letters over the estate of Robert Moyle Petri (Petri), deceased.

Robert Moyle Petri, a resident of Racine, died on May 11, 1978.   He was survived by his five children. Petri executed an instrument, dated May 22, 1968, which was admitted to probate as his will, without objection. Articles Fourth and Fifth of Petri's will provide:

"FOURTH: If and in case my wife predecease me or die with me in a common disaster during the minority of our children or any of them, I request the court to appoint our daughter, Linda, guardian of the person or the minor children and the First National Bank & Trust Company of Racine, Wisconsin, guardian of their estate.

"FIFTH: I do hereby constitute and appoint my wife, Freda F. Petri, executrix of this my will and direct that she be permitted to serve without bond and give her the power to sell, mortgage or otherwise dispose of any of my property, real or personal, without requiring her to first obtain the approval of the Court of Probate or any Judge thereof.

"If and in case my wife predeceases me or declines to serve as executrix, I appoint the First National Bank and Trust Company as executor, granting to it like powers."

Petri's wife, Freda F. Petri, died in November, 1973.

Petri's estate has an estimated gross worth of $300,000 and a net worth, after deducting two mortgages, of about $250,000. The estate consists of Petri's homestead, commercial real estate subject to leases, checking and savings accounts, and miscellaneous other assets. Petri's children are the only beneficiaries of his will.

All of Petri's children desire that Petri's daughter Barbara Elsen be named personal representative in preference to First National, the executor named in the will. Mrs. Elsen is willing to serve without fee, and it is for this reason alone that the beneficiaries seek her appointment and oppose the appointment of First National.

Judge Skow considered separate petitions by Mrs. Elsen and First National for the issuance of domiciliary letters. Each sought to be appointed personal representative of the Petri estate. All parties joined in a written stipulation of facts which was submitted to Judge Skow. Judge Skow rendered an oral decision stating that First National was "unsuitable" and there-

fore not entitled to receive domiciliary letters. We conclude his findings were based primarily on the following stated reasons:

(1) The testator did not manifest a specific intent to have a corporate fiduciary serve as personal representative; his first choice was his wife.

(2) The will was executed in 1968 when several of Petri's children were still minors; all are now of the age of majority.

(3) It is the unanimous desire of all beneficiaries under the will to have Mrs. Elsen serve as personal representative.

(4) The interests of the estate would be better served by having Mrs. Elsen serve without any fee rather than allowing First National "to work the file so to speak and to collect its two per cent fee."

The court appointed Barbara J. Elsen to serve as personal representative of the estate.

First National filed a petition in the court of appeals seeking a writ of mandamus commanding Judge Skow to issue domiciliary letters to First National. Without allowing Judge Skow to respond, the court of appeals rendered a decision and ordered the writ to issue.

Judge Skow was never ordered to respond to the petition for mandamus and thus was never afforded an opportunity to be heard by the court of appeals. The court of appeals is not permitted to grant, ex parte, a petition for a supervisory writ. *See:* Sec. (Rule) 809.51 (2) and (3), Stats. However, to reverse and remand with directions that the court of appeals reconsider the petition would cause further delay in the processing of the Petri estate. Although denied the opportunity to respond in the court of appeals, Judge Skow has had the opportunity to fully brief the issues in this court. In view of the exigent circumstances in this case, and because the parties have fully briefed their respective

positions on the merits, we exercise our discretion to review the order of the court of appeals on its merits.[1]

The questions presented are:

(1) Is a probate court restricted to consideration of the competency or capacity of an executor named in the will in determining whether the named executor is "a person whom the court deems unsuitable for good cause shown" under sec. 856.23(5), Stats.?

(2) Was Judge Skow's finding that First National was unsuitable under sec. 856.23(5), Stats., supported by good cause?

This appeal involves an interpretation of subsection (5) of sec. 856.23, Stats.[2] The issue is whether that phrase confers on the probate court discretion to consider matters unrelated to the competency or capacity of a person in determining whether that person is "unsuitable" to serve as personal representative.

---

[1] The respondents in the court of appeals other than Judge Skow did not join in his petition to appeal and have not filed any separate petition to appeal. The Rules of Appellate Procedure required that Petri's children be made respondents in the court of appeals because they are the real parties in interest. Judge Skow has no direct interest in the outcome and is not directly aggrieved by the order of the court of appeals. *See:* Martineau and Malmgren, *Wisconsin Appellate Practice,* sec. 2901, 201–02; Rule 809.52, Judicial Council Committee's Note, 83 Wis.2d xli (1978). However, because First National has not challenged Judge Skow's standing, we choose to review the order of the court of appeals to resolve the issues presented.

[2] Sec. 856.23, Stats., provides: "A person including the executor named in the will is not entitled to receive letters if: (1) he is under 18 years of age, or (2) of unsound mind, or (3) a corporation not authorized to act as a fiduciary in this state, or (4) a nonresident of this state who has not appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate and filed the appointment with the court, or (5) a person whom the court deems unsuitable for good cause shown. Nonresidency may be a sufficient cause for nonappointment or removal of a person in the court's discretion.

Judge Skow concedes that, prior to the enactment of the Probate Code, Chapter 339, Laws of 1969, a probate court was required to appoint as executor a person nominated by a testator if the nominee was legally competent, willing, and gave bond when and as required by law. Sec. 310.12, Stats. 1969; *Estate of Svacina,* 239 Wis. 436, 444, 1 N.W.2d 780 (1942). "Legally competent" was never expressly defined, but decisions by this court have indicated that legal incompetency could be found when, at the time of appointment, the nominee was prevented from acting as executor by reason of his mental condition, *Saxe v. Saxe,* 119 Wis. 557, 560, 97 N.W. 187 (1903); by reason of serious conflict between personal interest and an immediate duty of the executor, *Estate of Keske,* 18 Wis.2d 47, 55, 117 N.W.2d 575 (1962); or by reason of some legal disability, such as minority. *See:* sec. 310.17, Stats. 1969. A nominee could not be found legally incompetent to serve merely because the heirs objected to the nominee's temper, disposition, habits, and moral character, *Saxe, supra* at 560; or because of the probate court's conclusion that it was for the best interest of the estate and all persons concerned that another be appointed as administrator. *Svacina, supra* at 440.

Judge Skow argues that, prior to the enactment of the Probate Code, grounds for disqualification were stated in three separate statutes: Sec. 310.16, Stats. 1969 (disqualification for refusal to accept the trust or to give bond); sec. 310.17, Stats. 1969 (disqualification during the minority of the nominee); and sec. 311.02, Stats. 1969 (disqualification of one as unsuitable or incompetent to administer the estate of an intestate). He submits that, by consolidating the factors for disqualification in one section, sec. 856.23, *Persons who are disqualified,* and particularly by employing the word "unsuitable" (whereas previously a nominee was entitled

to letters testamentary if "legally competent"), the legislature intended that probate courts conduct a broader inquiry before determining that a nominee in the will is entitled to domiciliary letters. He concludes the use of the word "unsuitable" vests a probate court with discretion to disqualify a named executor when considerations unrelated to the nominee's legal or technical capacity convince the court that another should serve instead.

First National contends that the enactment of the Probate Code worked no change in then-existing Wisconsin law regarding disqualification from service as a personal representative. It argues the phrase "unsuitable for good cause shown" merely consolidates prior statutes and embodies case law concerning special situations not otherwise dealt with by statute. *See, e.g., Estate of Keske, supra* (conflict of interest). First National contends that "suitable" refers only to the nominee's capacity and competence to administer the estate.

In situations where one of several interpretations of a statute are possible, this court " 'must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished.' " *Wisconsin Southern Gas Co. v. Public Service Commission,* 57 Wis.2d 643, 648, 205 N.W.2d 403 (1973).

Sec. 856.23, Stats., specifies five grounds for which a nominee may be disqualified. Subsection (1) deals with minority. Subsection (2) disqualifies a nominee of unsound mind. Subsection (3) requires that a corporation may not serve as personal representative unless authorized to act as a fiduciary. Subsection (4) automatically disqualifies nonresidents who have not designated a resident agent to accept service of process. Consistent with the pattern which existed prior to the 1969 Probate Code, sec. 856.23(1) through (4) dis-

qualify a nominee when the nominee is not capable of conducting the affairs of an estate. None of the enumerated limitations allow the court to disqualify a nominee for grounds unrelated to the nominee's capacity or competence to do business. Judge Skow relies on subsection (5) which allows the disqualification of a nominee "whom the court deems unsuitable for good cause shown." The following sentence in subsection (5), sec. 856.23, states that nonresidency may be a sufficient cause for nonappointment in the court's discretion. Because availability is to be considered, it is guidance that sec. 856.23 (5), dealing with disqualification for cause, be limited to objections concerning the nominee's capacity to conduct the duties of personal representative.

The legislative history of sec. 856.23 (5), Stats., reveals the Committee Comment which states: "This section is based upon and is a consolidation of former ss. 310.16, 310.17, 311.02 and 324.35." The Comment accompanying sec. 856.21,[3] which requires that letters be granted a named executor unless disqualified, states: "This section is a restatement of former ss. 310.12 and 311.02 and current practice." In the pre-Code statutes, a named executor could be refused domiciliary letters only if disqualified by secs. 310.16 or 310.17, Stats. 1969, or if legally incompetent as that term was used in sec. 310.12, Stats. 1969. Though sec. 856.23, represents an expansion of the grounds for disqualifying a nominee beyond those of the old statutes, these grounds still pertain to the nominee's capacity. We conclude First Nation-

---

[3] Sec. 856.21, Stats., provides: "Letters shall be granted to one or more of the persons hereinafter mentioned, who are not disqualified, in the following order:

"(1) The executor named in the will.

"(2) Any person interested in the estate or his nominee within the discretion of the court.

"(3) Any person whom the court selects."

al is correct in its contention that sec. 856.23 merely consolidates prior statutes and embodies prior case law dealing with the nominee's capacity or competence as criteria for determining suitability to serve.

■

When interpreting statutes, nontechnical words used in a statute are to be given their ordinary and accepted meaning when not specifically defined, and this meaning may be ascertained from a recognized dictionary. *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 123, 248 N.W.2d 885 (1977). Webster's *Third New International Dictionary,* 2286, (1966), lists several definitions of the word "suitable." One of them provides: "having the necessary qualifications: meeting requirements: *Apt, Qualified* (find a . . . actor for the role)." We believe the opposite of the quoted definition of "suitable" in Webster's should be applied in the interpretation of "unsuitable" as that word is used in sec. 856.23(5), Stats., as grounds for disqualification.

Judge Skow's interpretation of sec. 856.23(5), Stats., would encourage probate courts to question the judgment of the testator and inquire into the makeup of the estate, the desires of the beneficiaries or heirs, comparative costs, the credentials of those desiring to be appointed personal representative, and the relative "suitability" of those candidates seeking to be appointed personal representative of the estate. Such a process would protract a proceeding that should be handled expeditiously and nullifies the priorities established by sec. 856.21. Such an interpretation would do violence to the fundamental rule that the intent of the testator is to be given effect. In *Svacina, supra* at 443, the court quoted approvingly from 11 *Am. & Eng. Encyc. of Law,* 744, 745 (2d ed.):

"In many, if not all, of the states of the Union the authority of an executor, while derived primarily from the will, is not derived solely therefrom, and is not com-

plete until the executor has qualified by complying with certain statutory requirements, and has received letters testamentary from a court of competent jurisdiction; *but the nomination contained in the will cannot be disregarded by the court unless the person named is for some reason disqualified to act as executor, and the authority of the court in the premises is limited to qualifying the executor and issuing letters testamentary, and does not extend to the appointment, as that authority pertains to the testator alone.*" (Emphasis in original.)

The court further stated:

"Although this rule [common-law rule] has been quite generally modified by statutes in this country, *the testamentary nomination will not be disregarded by the courts unless the person named in the will is disqualified by the statute. Saxe v. Saxe,* 119 Wis. 557, 97 N.W. 187. The extent to which the courts seek to carry out the wish of testators in the appointment of executors is illustrated by cases cited and quoted in 23 Corp. Jur. 1024 *et seq. Except for very cogent reasons the courts follow the maxim 'Whom the testator will trust so will the law.'* " (Emphasis in original.) *Svacina, supra* at 445, quoting, *Will of Zartner,* 183 Wis. 506, 512, 198 N.W. 363 (1924).

We are persuaded that the fundamental policy favoring the testator's intent should not be abandoned by resorting to a construction which finds so little support in the context and the history of the statute.

The enactment of the Probate Code did not alter the rule that a nominee may not be disqualified from serving as personal representative except upon grounds which pertain to the nominee's capacity or competence to conduct the business of the estate. None of the reasons stated by Judge Skow in support of his finding that First National was "unsuitable" pertain to the capacity or competency of First National. Accordingly, the court

of appeals was correct when it concluded that Judge Skow's finding that First National was unsuitable under sec. 856.23(5), Stats., was not supported by good cause.

*By the Court.*—Order affirmed.